831 So.2d 906 (2002)
John H. WYATT
v.
AVOYELLES PARISH SCHOOL BOARD.
Lorraine Seiss
v.
Avoyelles Parish School Board.
Peter Marcotte, Keith A. Morrow, James K. Best, Wilbert Carmouche, Drusilla Goody, Albin M. Lemoine, Jr., Richard Mayeaux and Susan B. Roy
v.
Avoyelles Parish School Board.
Nos. 2001-C-3180, 2002-C-0131, 2002-C-0259.
Supreme Court of Louisiana.
December 4, 2002.
*909 Eddie Knoll, District Attorney, David E. Lafargue, Asst. District Attorney, Counsel for Applicants.
James I. Funderburk, Abbeville (Nos. 2001-C-0131, 2001-C-0259), Brian D. Cespiva, Alexandria (2001-C-3180), Counsel for Respondent.
KIMBALL, J.[*]
We granted certiorari in these consolidated cases to determine whether a "use it or lose it" vacation policy is proscribed by La. R.S. 23:631 or La. R.S. 23:634. For the reasons that follow, we conclude that such a policy is not illegal. However, we conclude that an employer is required to compensate an employee upon his retirement for unused annual leave that accrues under the terms of the employer's "use it or lose it" policy. If the employer does not compensate his employee for this accrued leave pursuant to the provisions of La. R.S. 23:631, he is liable to that employee for penalty wages pursuant to La. R.S. 23:632. Additionally, if the employee must file suit for these wages due him, he is entitled to reasonable attorney fees pursuant to La. R.S. 23:632.

Facts and Procedural History
In four separate actions, eighteen retired twelve-month employees of the Avoyelles Parish School Board ("the Board") filed suit against the Board seeking compensation pursuant to La. R.S. 23:631 et seq. for annual leave they allegedly accumulated prior to retirement but which they did not use. Plaintiffs additionally claimed they were owed penalties and attorney fees pursuant to La. R.S. 23:632 for the Board's refusal to pay the amounts due under La. R.S. 23:631. Thereafter, the suits were consolidated for trial. Eventually seven of the original plaintiffs settled with the Board, leaving for trial on the merits these three consolidated suits and eleven plaintiffs.[1]
After a trial at which voluminous records, policies, and letters were introduced, the district court determined that the applicable *910 policy of the Board was a "use it or lose it" policy that required an illegal forfeiture of earned wages. The court first found that plaintiffs' claims had not prescribed because plaintiffs filed suit within three years of their respective dates of retirement. Next, the district court reviewed the oral and written annual leave policies of the Board along with the testimony presented at trial concerning the manner in which annual leave was earned and noted there was a conflict among the various written policies and the consistent way in which the policy appeared to have been implemented. The district court concluded that the applicable policy to all claims at issue was a "use it or lose it" policy wherein annual leave was earned in one year and was required to be taken in the next year or it was lost. The court next found that although the applicable "use it or lose it" policy did not allow accumulation of annual leave, it resulted in a forfeiture of a vested right, which this court found to be illegal in Beard v. Summit Institute of Pulmonary Medicine & Rehabilitation, 97-1784 (La.3/4/98), 707 So.2d 1233. Thus, the district court determined that the Board's "use it or lose it" policy was illegal. Consequently, the district court examined the Board's available records and calculated the amount of compensation due each plaintiff for unused annual leave at the time of his retirement. The district court awarded penalties to some plaintiffs and attorney fees to all plaintiffs. Finally, the district court assessed costs against the Board.
The Board appealed the trial court's ruling, and plaintiffs answered the appeal. The court of appeal affirmed the judgment of the district court insofar as it ruled that plaintiffs' claims had not prescribed, that plaintiffs were owed compensation for their unused annual leave, and that certain plaintiffs were entitled to penalty awards.[2]Wyatt v. Avoyelles Parish Sch. Bd., 01-531 (La.App. 3 Cir. 10/31/01), 799 So.2d 1197; Marcotte v. Avoyelles Parish Sch. Bd., 01-532 (La.App. 3 Cir. 10/31/01), 799 So.2d 1205; Seiss v. Avoyelles Parish Sch. Bd., 01-533 (La.App. 3 Cir. 10/31/01), 799 So.2d 1205. The court of appeal first concluded that the Board was prevented from divesting its employees of unused annual leave at the end of each year by the provisions of La. R.S. 23:631 and La. R.S. 23:634. Citing its previous decision in Picard v. Vermilion Parish Sch. Bd., 98-1933 (La.App. 3 Cir. 6/23/99), 742 So.2d 589, writ denied, 99-2197 (La.11/19/99), 749 So.2d 675, the court of appeal found that absent clear and unambiguous language in the Board's policy that annual leave was a mere gratuity and not an amount due, the plaintiffs accrued annual leave from year to year and the Board's attempt to divest plaintiffs of their vested rights was invalid. After determining that plaintiffs' claims had not prescribed, the court of appeal then reviewed the specific awards made by the district court to each plaintiff and found, with one exception, there was no abuse of discretion in the awards.[3] Finally, the court of appeal affirmed the judgment of the district court with respect to penalties, finding no error *911 in the district court's penalty determinations. The court of appeal granted rehearing to award additional attorney fees to certain plaintiffs and to clarify its assessment of the costs on appeal.
The Board and eight of the plaintiffs, Keith A. Morrow, James K. Best, Wilbert Carmouche, Roy P. Dupont, Lorraine Seiss, David Aymond, Wilma Roy, and Tena McNeal, applied for supervisory writs in this court. We granted certiorari to determine whether the Board's "use it or lose it" policy is proscribed by the provisions of La. R.S. 23:631 et seq. Wyatt v. Avoyelles Parish Sch. Bd., 01-3180 (La.3/22/02), 811 So.2d 937; Seiss v. Avoyelles Parish Sch. Bd., 02-0131 (La.3/22/02), 811 So.2d 937; Marcotte v. Avoyelles Parish Sch. Bd., 02-0259 (La.3/22/02), 811 So.2d 938.

Discussion
Before this court, the Board assigns as error the lower courts' rulings that its "use it or lose it" policy requires a forfeiture of a vested right. The Board contends that an employer has the right to prevent employees from accumulating unused annual leave and that its annual leave policies do not violate the provisions of La. R.S. 23:631 or La. R.S. 23:634. The Board argues that while these statutory provisions prohibit an employment contract that requires the forfeiture of wages upon discharge, its annual leave policy simply disallows accumulation of unused annual leave such that the loss of any unused annual leave on a yearly basis is due to an employee's conscious failure to timely utilize his annual leave. In opposition, plaintiffs, relying in part on this court's decision in Beard, contend that the Board's policy requires forfeiture of an earned wage in violation of applicable statutory provisions.
The legislature entrusts the management of Louisiana parish public schools to school boards. Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235. School Boards are authorized "to make such rules and regulations for [their] own government, not inconsistent with law or with regulations of the State Board of Elementary and Secondary Education, as [they individually] may deem proper." La. R.S. 17:81(C). School Board employment policies are such rules and regulations that may be established as long as they are not inconsistent with constitutional or statutory law or with the regulations of the State Board of Elementary and Secondary Education.
At the outset, we note the trial court was presented with evidence of various policies of the Board, both oral and written, concerning annual leave. After considering all the evidence presented, including the testimony of witnesses called by both plaintiffs and defendant, the district court found it was clear that the Board's policy did not provide for the accumulation of unused annual leave days. Additionally, the district court found, based on the testimony of every witness, that the Board never agreed to pay an employee for unused vacation time as a condition of employment. Based on all the evidence presented at trial, the district court concluded the Board policy applicable to all claims submitted by plaintiffs was a "use it or lose it policy." According to the district court, this policy operated as follows: each employee earned annual leave at a rate based on his years of service every year of his employment; those days earned in a certain year could not be used until the following year; those days earned in the previous year that were not used by June 30 of the following year could not thereafter be used and were considered "lost." After reviewing the various annual leave policies of the Board, both oral and written, the background of those policies, and *912 the testimony of all the witnesses, we agree with the district court's characterization of the annual leave policy that was applicable to all of plaintiffs' claims.[4] We will therefore address the legality of the Board's actions within the context of the "use it or lose it" policy as described by the trial court.
To determine whether the Board's policy was violative of Louisiana law, the following statutes are relevant. La. R.S. 23:631 provides in pertinent part:
A.(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
...
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Additionally, La. R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
These statutes are designed to compel prompt payment of wages when an employee is discharged or resigns. Beard, 97-1784 at p. 3, 707 So.2d at 1235. They are penal in nature and must therefore be strictly construed and yield to equitable defenses. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619 (citing Mason v. Norton, 360 So.2d 178, 180 (La.1978)).
The Board violated La. R.S. 23:631 if it failed to pay plaintiffs upon their retirement "the amount then due under the terms of employment...." Pursuant to La. R.S. 23:631(D), vacation pay is "an amount then due" if, according to the employer's stated vacation policy, the employee is eligible for and has accrued the right to take vacation time with pay and the employee has not taken or been compensated for the vacation time as of the *913 date of his resignation. Subsection (D) cannot be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Similarly, La. R.S. 23:634 prohibits an employment contract which requires the forfeiture of "wages" upon resignation or discharge. See Beard, 97-1784 at p. 5, 707 So.2d at 1236. Accrued vacation time is "wages." Id. Thus, the Board's "use it or lose it" policy violates La. R.S. 23:634 if it requires the forfeiture of accrued vacation time upon resignation or discharge.
In Beard, this court considered La. R.S. 23:631(A)(1)(b) and La. R.S. 23:634 to determine whether an employment policy that required forfeiture of all accrued benefits when an employee abandoned his position, which was defined as walking off the job without cause or voluntarily resigning without notice, was violative of Louisiana law. In that case, the terms of plaintiff's employment provided that she would receive compensation for any unused vacation time. When plaintiff walked off her job without cause, her employer, relying on its employment policy, refused to pay her accrued vacation pay. In considering whether the employer violated the terms of La. R.S. 23:631, this court found that accrued vacation time is an "`amount then due under the terms of employment' and constitutes wages under La. R.S. 23:631." Beard, 97-1784 at p. 5, 707 So.2d at 1235.[5] This court also found the provisions of La. R.S. 23:634 were applicable to employment policies, even if the policy is not required to be signed by the employee. Furthermore, we concluded that accrued vacation time is wages and, because the employer's policy provided that plaintiff would be compensated for any unused vacation time, the employer was precluded by La. R.S. 23:634 from requiring plaintiff to forfeit those wages upon resignation. Thus, we concluded that the employer violated both La. R.S. 23:631 and La. R.S. 23:634 when it refused to pay plaintiff for her accrued vacation benefits.
Turning to the instant case, we note that nothing in La. R.S. 23:631 prevents an employer from restricting an employee's right to accrue annual leave or vacation pay. Rather, the statute generally provides that an employer must compensate an employee upon his resignation for any unused vacation pay that the employer's stated vacation policy has allowed him to accrue. Thus, we must look to the nature of the benefit that was earned by plaintiffs to determine whether the Board's failure to pay plaintiffs for their unused annual leave violated La. R.S. 23:631.
Here, plaintiffs earned annual leave in one year and were required to use that leave in the following year or it was lost. If the employee did not use his accrued leave by June 30 of the year following that in which it was earned, the employer was no longer obligated to provide the leave to plaintiff.[6] Thus, the annual leave earned *914 by an employee was subject to a condition that the employee use the leave by June 30 of the year following that in which it was earned or the leave was lost. Plaintiffs' accrued annual leave was therefore limited by the terms of the Board's policy to those days earned in the previous year.
Pursuant to La. R.S. 23:631(D), vacation pay is "an amount then due" only if the employee has accrued the right to take vacation time with pay in accordance with the stated vacation policy of the employer. Moreover, the provisions of La. R.S. 23:631(D) cannot be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy. At the time of their retirement, plaintiffs had only accrued the right to unused annual leave they had earned in the previous year and any annual leave they earned during the year of their retirement.[7] Thus, the Board was obligated under La. R.S. 23:631 to compensate plaintiffs for this amount of unused annual leave they had accrued prior to their retirement. Any failure to compensate plaintiffs for this amount of accrued unused leave was in violation of La. R.S. 23:631.
We find, however, that any unused leave that was lost pursuant to the Board's "use it or lose it" policy prior to the year before their retirement was not accrued in accordance with the policy and was therefore not "an amount then due." This interpretation is not in conflict with La. R.S. 23:631(D)(2) because the annual leave that was lost prior to the year before plaintiffs' retirement was not "actually earned" pursuant to the Board's policy at the time of plaintiffs' retirement.
We must next consider whether the Board's failure to compensate plaintiffs for their unused annual leave is prohibited by La. R.S. 23:634. Like the provisions of La. R.S. 23:631, nothing in La. R.S. 23:634 prevents an employer from restricting an employee's right to accrue wages, or vacation time. The Board's "use it or lose it" policy is violative of La. R.S. 23:634 only if it requires the forfeiture of accrued vacation time upon resignation or discharge. See Beard, 97-1784 at p. 5, 707 So.2d at 1236. As explained above, at the time of plaintiffs' retirement, plaintiffs had accrued only the right to unused annual leave they had earned in the year prior to their retirement and any annual leave they earned during the year of their retirement. *915 Consequently, the Board violated La. R.S. 23:634 by failing to compensate plaintiffs for their accrued right to unused annual leave earned in the year prior to their retirement and any annual leave earned during the year of their retirement.
Based on the foregoing discussion, we conclude that the Board's "use it or lose it" policy did not itself violate the provisions of La. R.S. 23:631 and La. R.S. 23:634. Rather, it was the Board's failure to compensate plaintiffs for the vacation pay that accrued under the terms of the policy, i.e., unused annual leave earned in the year prior to their retirement and any annual leave earned during the year of their retirement, that violated these statutory provisions.
Our determination that nothing in the provisions of La. R.S. 23:631 and La. R.S. 23:634 prevents an employer from restricting an employee's right to accrue annual leave, and that the Board's "use it or lose it" policy is not per se illegal, does not conflict with our decision in Beard. In Beard, the terms of plaintiff's employment were that she would be compensated for any unused vacation time. Thus, any vacation time that was earned at any point during plaintiff's employment and was not used at the time of her resignation was accrued vacation time pursuant to the employer's policy. Such unused accrued leave was therefore "an amount then due" pursuant to La. R.S. 23:631. Likewise, La. R.S. 23:634 prevented the employer from adopting a policy that required the forfeiture of plaintiff's unused accrued vacation time at the time of plaintiff's resignation. In contrast, the instant case involves a policy that never allows the accrual of annual leave beyond June 30 of the year following that in which the leave was earned. Because the Board's stated policy limited the accrual of vacation time, the Board was only liable to compensate plaintiffs for leave that had accrued pursuant to the terms of its own policy at the time of their retirement.
Having addressed the nature of plaintiffs' claims, we must determine whether their claims for payment of this compensation have prescribed. The prescriptive period applicable to plaintiffs' claims is provided by La. C.C. art. 3494. That Article establishes a three-year liberative prescription period for an action to recover compensation for services rendered, including those actions for payment of salaries and wages. La. C.C. art. 3495 provides that the prescriptive period begins to run from the day the payment is exigible. This provision has been interpreted to mean that liberative prescription commences to run when a creditor can act on his claim for payment. Ledoux v. City of Baton Rouge, 99-2061, p. 5-6, (La.2/29/00), 755 So.2d 877, 880.
In the instant case, plaintiffs could not use the accrued annual leave they had earned in the year prior to their retirement and any annual leave they earned during the year of their retirement because their retirement prevented them from so doing. Thus, plaintiffs could not make a demand for payment of that accrued leave until the date of their retirement. Consequently, the annual leave earned during that last year of employment was exigible, or due, upon the date of each plaintiff's retirement.
The record indicates that the instant plaintiffs all instituted actions seeking payment of their unused annual leave against the Board within three years of their retirement. Therefore, we find that plaintiffs' claims for annual leave earned during their last year of employment have not prescribed under La. C.C. art. 3494.
Although we are able to determine from the record before us that plaintiffs' suits *916 were timely filed and that plaintiffs are entitled to compensation for accrued unused annual leave they earned in the year prior to their retirement and during the year of their retirement, we are unable to determine the exact amount the Board owes each plaintiff. The lower courts improperly concluded that the Board's policy required an illegal forfeiture of all unused annual leave ever earned by plaintiffs and, consequently, the district court's awards for accrued annual leave, which were affirmed by the court of appeal, included all unused annual leave each plaintiff had ever earned during his employment with the Board. For the foregoing reasons, we reverse the awards for unused annual leave, and we remand the case to the district court for it to determine the amount of payment plaintiffs are owed for accrued unused annual leave they earned in the year prior to their retirement and during the year of their retirement.
We note that plaintiffs Wyatt, Goody, and Lemoine did not apply for review of the court of appeal's judgment in this court. Where certiorari is granted on the application of any party, the judgment cannot be changed to the benefit of another party who has failed to apply for review. Succession of Doll v. Doll, 593 So.2d 1239 (La.1992); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377 (1962). Therefore, to the extent the judgment against the Board has been reversed, these three plaintiffs are allowed to retain that portion of the judgment in their favor that is attributable to unused annual leave earned in the prior to their retirement and during the year of their retirement. On remand, the district court is instructed to determine whether the awards made to Wyatt, Goody, and Lemoine include those amounts due for unused annual leave they earned during the year prior to their retirement and the year of their retirement. If the awards include these amounts, then they may be specified by the district court and collected by plaintiffs. If, however, the district court's judgment does not include an award for leave earned during these periods, as suggested by Wyatt's Motion for Amendment of Judgment and Memo in Support of Motion for Amendment of Judgment filed on December 5, 2000, then those plaintiffs who did not file an application for review in this court are precluded from now recovering such sums.
Having determined that plaintiffs' suits were timely filed and that plaintiffs are owed compensation for their accrued unused annual leave earned in the year previous to their retirement and during the year of their retirement, we must consider whether the Board is liable for penalty wages by virtue of its violation of La. R.S. 23:631. La. R.S. 23:632 provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
La. R.S. 23:632 is a penal statute that must be strictly construed and may yield to equitable results. Beard, 97-1784 *917 at p. 7, 707 So.2d at 1236 (citing Bannon v. Techeland Oil Corp., 205 La. 689, 693, 17 So.2d 921 (1944)). This court has previously stated that "a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits a court to decline to impose penalty wages on an employer. Beard, 97-1784, p. 7, 707 So.2d at 1236 (citing Carriere v. Pee Wee's Equipment Co., 364 So.2d 555, 557 (La.1978)). Furthermore, this court has found that an employer's reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages under La. R.S. 23:632. Beard, 97-1784 at p. 9, 707 So.2d at 1237.
Here, we find that the "use it or lose it" policy that prevents an employee from accruing annual leave beyond June 30 of the year following that in which it was earned is lawful and does not violate La. R.S. 23:631. However, while the policy is lawful in itself, the Board failed to comply with La. R.S. 23:631 when it refused to pay plaintiffs the amount then due under the terms of its own "use or lose it" policy. In this case, the Board should have known that under its policy, a retiring employee would have accrued annual leave during the year prior to his retirement and during the year of his retirement. In fact, the record contains some indication that the Board did, in fact, believe that at least some plaintiffs were owed compensation for the last year's accrued annual leave.[8] The Board has no good faith defense for its failure to abide by the terms of its own lawful policy. It is unclear whether the Board failed to compensate each plaintiff in accordance with 23:631 for his accrued annual leave at the time of his retirement. However, if the district court determines upon remand that the Board did, in fact, fail to pay a plaintiff an amount due under La. R.S. 23:631 as discussed herein, then the Board shall be assessed penalties in accordance with La. R.S. 23:632.
Albeit for reasons different from those expressed in this opinion, the district court recognized that the Board was liable for penalties in accordance with La. R.S. 23:632 and the court of appeal affirmed those penalty awards as being within the discretion of the district court. The record is unclear as to whether some of these penalty awards were proper. For example, the district court denied the claim of Roy P. Dupont for penalty wages, finding that the Board made an unconditional payment to Mr. Dupont on August 28, 2000 in the amount of $3,256.32 representing sixteen days of "unconditional payment." However, it is unclear from the record whether this was the amount of unused accrued annual leave the Board owed Mr. Dupont pursuant to La. R.S. 23:631. Therefore, out of an abundance of caution, we reverse the awards of penalty wages and instruct the district judge to fix the amount of penalty wages owed to each plaintiff on remand. As to those plaintiffs who did not file an application for certiorari in this court, we find that if the district court concludes they are entitled to penalties on remand, they may be given either the same amount as originally awarded, or a lesser amount, whichever is appropriate, but they may not be awarded an amount greater than that originally awarded by the district court.
La. R.S. 23:632 further provides that "[r]easonable attorney's fees shall be *918 allowed, which shall be taxed as a cost to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed...." Here, plaintiffs have presented a well-founded suit for unpaid wages accrued pursuant to the Board's "use it or lose it" policy. They are therefore entitled to attorney fees. The sums awarded as attorney fees by the lower courts are reasonable and are affirmed.

CONCLUSION
La. R.S. 23:631 and La. R.S. 23:634 do not prevent an employer from restricting an employee's right to accrue annual leave or vacation pay. Thus, the Board's "use it or lose it" policy, as described above, is a lawful employment policy. That portion of the court of appeal's judgment to the contrary is reversed. Under the terms of the Board's policy, plaintiffs retired with accrued annual leave for which they were entitled to be compensated pursuant to La. R.S. 23:631. The record is unclear as to the amount of compensation due plaintiffs. Therefore, the court of appeal's judgment affirming the monetary awards made to each plaintiff is reversed and the case is remanded to the district court for it to determine the amount of compensation due each plaintiff in a manner consistent with this opinion. If plaintiffs were not compensated in accordance with La. R.S. 23:631, they are entitled to penalties pursuant to La. R.S. 23:634. Because the record is unclear as to the amount of penalty wages due plaintiffs, the court of appeal's judgment regarding penalties is reversed. On remand, the district court shall fix the amount of penalties owed by the Board to each plaintiff. Because plaintiffs filed a well-founded suit for any unpaid wages whatsoever, they are entitled to reasonable attorney fees pursuant to La. R.S. 23:632. The court of appeal's judgment with respect to attorney fees is affirmed.
For the reasons expressed herein, the judgment of the court of appeal is affirmed in part and reversed in part, and the case is remanded to the district court for judgment consistent with the opinion contained herein.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
NOTES
[*] Retired Judge Fred C. Sexton, assigned as Associate Justice Ad Hoc, sitting for Justice Jeannette T. Knoll, recused.
[1] Plaintiffs are John Wyatt, Keith A. Morrow, James K. Best, Wilbert Carmouche, Drusilla S. Goody, Albin M. Lemoine, Jr., Roy P. Dupont, Lorraine Seiss, David Aymond, Wilma Roy, and Tena McNeal.
[2] The court of appeal amended the award made to Albin Lemoine, Jr. to "conform to the admission of fact made by the Defendant to show that he is owed accrued unused annual leave of 93.5 days." The court of appeal also awarded additional attorney fees on appeal to John Wyatt and assessed the Board with 75% of the costs of the appeal and plaintiffs with 25% of the costs of the appeal.
[3] As previously noted, the court of appeal increased the award to Albin Lemoine, Jr. in light of defendant's admission that Mr. Lemoine had not used 93.5 days of annual leave at the time of his retirement.
[4] We note that the parties have not seriously challenged the district court's conclusion that the annual leave policy applicable to plaintiffs' claims was a "use it or lose it" policy as described above.
[5] Subsection (D) was added to La. R.S. 23:631 by Act No. 56 of 1997, effective August 15, 1997. The facts of Beard, which was decided by this court on March 4, 1998, arose in 1995. This court did not mention subsection (D) in the Beard decision, apparently being of the belief that the subsection was inapplicable to plaintiff's claims. In any case, we concluded in Beard that accrued vacation time is an "amount then due" under La. R.S. 23:631(A), a conclusion which is consistent with the provisions of subsection (D).
[6] It should be recognized, however, that in order for the employer's obligation to provide the leave to be discharged by its non-use, an employee must not have been prevented by the employer from using his annual leave during the year in which he was entitled to use it according to the terms of the policy. See New Orleans Firefighters Local 632 v. City of New Orleans, 00-1921, p. 8 (La.5/25/01), 788 So.2d 1166, 1171. There is no proof in the record that the Board deprived any plaintiff of using his annual leave during the year following that in which it was earned. We note that James Best testified he was unable to use his annual leave because, as a principal, he had to conduct summer school, but the record is unclear regarding whether Mr. Best requested annual leave during the remainder of the year and whether the Board prevented him from using his annual leave.
[7] The correctness of this conclusion is best illustrated by an example. Assume John worked under the Board's "use it or lose it" policy for a full year, from July 1, 1997 through June 30, 1998, and earned ten days of annual leave that could be used through June 30, 1999. John then worked a full year, from July 1, 1998 through June 30, 1999, used eight days of annual leave and earned ten more that could be used through June 30, 2000. John did not use two of his accrued annual leave days before June 30, 1999, and, pursuant to the Board's policy, those days were lost. If John retires on March 30, 2000, without using any leave earned the previous year, he has accrued at the time of his retirement those days he earned in 1998/1999 that could have been used through June 30, 2000, along with those days he earned between July 1, 1999, and March 30, 2000, which he was prevented from using due to his retirement. La. R.S. 23:631(D)(2) requires this result because those days earned after July 1, 1999, were "actually earned" at the time of John's retirement pursuant to the Board's policy and the Board cannot require them to be forfeited.
[8] For example, on January 14, 2000, Mr. Howard Jeansonne, Superintendent of Schools, sent a letter to Mrs. Wilma Roy indicating that a check was enclosed "for your unused annual leave beginning with your last year of employment at a rate of 100%...."