THOMAS F. DALEY, Judge.
The defendant, Commodity Control Services Corporation d/b/a Comtrol Services Corporation, (Comtrol), has appealed the trial court judgment in favor of plaintiff. For the reasons that follow, we affirm. FACTS:
The plaintiff, Donald Ross, was employed by Comtrol for 18 years. During the last two years of his employment, he had many personal difficulties including the death of his mother, illness of his father, and his divorce. On September 19, 2000, he was informed that Comtrol was placing him on a leave of absence. On November 15, 2000, he was terminated by Comtrol. After he was terminated, Mr. Ross sought reimbursement for travel and entertainment expenses, as well as unused sick leave and vacation time. He filed suit after Comtrol refused payment.
At the trial in this matter, Mr. Ross testified that at the time he was terminated, he was working as the National Sales Manager, earning $65,000.00 per year. His job duties included calling on existing customers and new customers. This included taking the customers and potential customers to dinner and various entertainment venues. He testified that Comtrol sometimes did not have the money to reimburse him for these expenses. He testified that at the time he was terminated, he was owed $18,254.21 for travel and entertainment expenses. In support of his position, a letter from the owner of Comtrol, James Glynn, was introduced into evidence. This letter acknowledged that Comtrol owed Mr. Ross reimbursement for travel and entertainment expenses in the amount of $12,949.00. Mr. Ross explained that he submitted receipts and documentation to Comtrol to support these expenses, but did not keep copies of this documentation. Mr. Ross explained that during the later part of his employment, *194 he did not have the money to entertain clients because he was not getting reimbursed by the company. Mr. Ross testified part of his compensation at Comtrol included a car allowance of $350.00 per month, which had not been paid in 1999 and 2000. He further testified that he was unaware of any medical expenses paid by Comtrol for him and/or his ex-wife after his termination.
Mr. Ross explained that prior to the implementation of a new sick leave policy in 1997, he had 120 days of accrued sick leave. He felt that he was entitled to sick leave pay for the 41 days he was placed on leave, as well as the remaining balance. Mr. Ross testified that during the last 20 months of his employment, he did not use any vacation time or sick leave. He further testified that Comtrol was to pay his medical insurance and benefits until he was terminated. He denied being told by Comtrol that the medical expenses would be paid and this would offset money owed to him by Comtrol for travel and entertainment expenses.
James Glynn testified that he was the person who put Mr. Ross in control of the Houston territory. He was present at a meeting held in 1999 regarding poor sales in the Texas and Louisiana area wherein Mr. Ross acknowledged that he had not done a good job marketing the company’s services and that he was not sure he would be able to do so in the future. Mr. Glynn explained that Mr. Ross had been a good employee and he tried to work with Mr. Ross during his personal crises. He acknowledged discussing Mr. Ross moving from Texas back to Louisiana to take care of his father. Mr. Glynn explained that by the time Mr. Ross was terminated, he had used up all of his sick leave and vacation time.
Mr. Glynn explained that in the July 31, 2000 letter, he was asking Mr. Ross to support his expenses with receipts. Mr. Ross did not respond to this request, so he was not reimbursed. During Mr. Glynn’s testimony, certain computer printouts were introduced into evidence and Mr. Glynn explained that these printouts indicated that Mr. Ross was reimbursed $9,000.00 in 1999 and $4,200.00 in 2000 for travel and entertainment expenses. Mr. Glynn was unable to produce cancelled checks to correspond with these payments. Mr. Glynn further explained that Comtrol continued to pay medical expenses for Mr. Ross and his wife after Mr. Ross was placed on leave and that he had a verbal agreement that the medical expenses would be offset by the travel and entertainment expenses Mr. Ross was owed.
The trial judge took the matter under advisement. He then rendered judgment in favor of Mr. Ross in the amount of $26,949.64, which represents $12,949.64 in travel and entertainment expenses, $10,250.00 for 41 days of sick leave, and $3,750.00 for three weeks of accrued vacation. Costs and attorney’s fees of $5,000.00 were also awarded. This timely appeal followed.

LAW AND DISCUSSION:

In its first Assignment of Error, Comtrol argues the trial court erred in allowing Mr. Ross to claim sick leave and vacation time after his time had already been depleted by his inactivity and voluntary abandonment of his job duties. In support of this position, Comtrol points to the testimony by Mr. Glynn and another Comtrol employee regarding a statement allegedly made by Mr. Ross that he had not done a good job in marketing and that he was not sure he would be able to do so in the future. Comtrol argues that Mr. Ross unilaterally left his position in Texas and moved back to Louisiana and claims Mr. Ross only actually worked % months of the last 20 months of his employment. *195 Comtrol claims that during this time, Mr. Ross spent five months at a camp, while being paid by the company, and used up more than his claimed 120 days of sick time. Comtrol did not file any type of action against Mr. Ross to recover salary paid that was allegedly not earned.
The testimony presented at trial indicates that Mr. Glynn knew that Mr. Ross had moved back to Louisiana to take care of his father. Mr. Glynn admitted that he had no records reflecting Mr. Ross’s vacation or sick leave taken in 2000. Additionally, Mr. Ross testified that during the time he was taking care of his father, he communicated with customers by telephone and traveled to Texas and New Jersey as part of his job duties.
In awarding Mr. Ross 41 days of sick leave, the trial court found that Comtrol’s company policy provided for six sick days per year of employment with a maximum accumulation of 60 days. The Court further found that on September 15, 2000, Comtrol placed Mr. Ross on sick leave as evidenced by the letter sent to Mr. Ross stating "... this step will give you the time necessary to seek proper medical treatment.” In awarding Mr. Ross three weeks of vacation pay, the trial court found that Comtrol’s company policy entitled an employee of Mr. Ross’ tenure to four weeks of vacation per year. The trial court reasoned that he was employed for three quarters of 2000 and as such had accrued three weeks of vacation.
We see no error in the trial court’s award of 41 days of sick leave. This award is supported by the September 2000 letter, as well as Mr. Ross’ testimony that he did not take any vacation or sick time during the last 20 months of his employment. The award of vacation time is supported by Mr. Ross’ testimony and Mr. Glynn’s testimony that he had no documents related to Mr. Ross’ sick leave and vacation time for 2000.
In its second Assignment of Error, Comtrol argues the trial court erred in awarding unsubstantiated expenses allegedly incurred on behalf of Comtrol, which were never documented in accordance with company policy. Comtrol further argues the trial court erred in failing to credit the company for monies paid at Mr. Ross’s request.
In awarding Mr. Ross $12,949.64 of his claimed $18,254.21 in travel and entertainment expenses, the trial court noted that Mr. Ross testified that he gave the receipts supporting these expenses to Com-trol. The trial court treated the August 1, 2000 letter from Mr. Glynn as an acknowledgment of reimbursement expenses owed to Mr. Ross in the amount of $12,949.64. The trial court refused to award the additional expenses claimed finding that Mr. Ross did not prove the additional sums were owed, noting there was no corroborating evidence.
We find no error in this award, as it is supported by the evidence. The August 1, 2000 letter to Mr. Ross from Mr. Glynn states “My records indicate that Comtrol owes you expenses in the amount of $12,949.64 through July 31, 2000.” Further, Mr. Glynn testified that he sent a letter to Mr. Ross in August or September 2000 “admitting how much we owed.” Mr. Glynn then testified that this amount had not been paid.
Comtrol goes on to argue that the trial court erred in not allowing an offset against any expense reimbursement for certain medical expenses it paid for Mr. Ross’ ex-wife. In denying this offset, the trial court found Comtrol did not prove by a preponderance of the evidence that Mr. Ross owed money to the company for unauthorized expenses. The Court went on *196 to state that it should not have allowed Comtrol to introduce evidence that they were entitled to an offset for medical related expenses because this offset was not affirmatively pled. Comtrol argues that its pretrial order put Mr. Ross on notice that it was seeking an offset for payment of medical expenses.
Our review of the evidence presented indicates that the trial court correctly denied Comtrol’s claim for reimbursement of unauthorized expenses and medical expenses. While Mr. Ross did not offer support of the full amount of his claimed expenses, Comtrol did not prove that Mr. Ross made unauthorized expenses. Some of Mr. Ross’ expenses were called into question, but there was no proof that these expenses were unauthorized. Comtrol did not file any type of action against Mr. Ross for reimbursement of unauthorized expenses or medical expenses. Additionally, Mr. Ross was not awarded the full amount of reimbursement sought. With regard to an offset for the medical expenses, Mr. Glynn testified that he had a verbal agreement with Mr. Ross that the reimbursement due Mr. Ross was being offset by medical expenses paid by the company after he was placed on leave. Mr. Glynn offered no documentation or evidence to support this agreement, nor was he able to state the amount of expenses paid. The trial court obviously rejected Mr. Glynn’s testimony regarding this agreement. We see no abuse of discretion in the trial court’s decision to refuse to allow the offset.
In its final Assignment of Error, Com-trol claims the trial court erred in awarding attorney’s fees. We disagree.
Comtrol’s argument is based on its position that the trial court erred in awarding Mr. Ross payment for sick leave and vacation time. Having found these awards were proper, we note that R.S. 23:631, et seq. as well as the jurisprudence entitles a plaintiff to attorney’s fees if any wages are awarded. Vacation pay is wages within the meaning of R.S. 23:632. Wyatt v. Avoyelles Parish School Bd., 2001-3180 (La.12/4/02), 831 So.2d 906. Thus, the trial court correctly awarded attorney’s fees.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.