MARC E. JOHNSON, Judge.
| ¡>This matter was remanded to this Court by the Louisiana Supreme Court for the limited purpose of having us clarify our previous ruling regarding any contract claims raised by appellants, the Doucets and Lafayette Insurance Company.
In our initial opinion, we found the trial court erred in finding the Doucets and Lafayette Ins. Co. liable under the theories of vicarious liability and negligent hiring. As such, we reversed that portion of the trial court’s April 30, 2010 judgment finding the Doucets vicariously liable for the negligence of Gammon and independently liable for hiring Gammon. We concluded that this finding made it unnecessary to address the last issue raised by appellants relating to a mutual waiver provision in the lease contract. Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co., 10-948 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277. The Supreme Court disagreed and remanded this matter for us to address the contract issue.
In their appellant brief, the Doucets and Lafayette Ins. Co. scantly argue, without one citation of legal authority, that there is a mutual waiver clause in the please contract between Mr. Doucet and the Turf Club that precludes liability for the damage caused by the fire and which applies to The Edge as a sub-lessee. Appellants contend that under the mutual waiver clause, Mr. Doucet and the Turf Club waived all claims against each other for any loss arising out of damage or destruction of the leased premises which was or could have been insured under a standard fire policy. Appellants further assert each party agreed to insure themselves for their own risks and to obtain a waiver of subrogation from their respective underwriters in favor of the other. Appellees, Certified Cleaning and Underwriters, respond that the contract is ambiguous and, thus, , should be construed against the Doucets for waiver of liability.
In its judgment, the trial court found Certified Cleaning was legally subrogated to The Edge’s contract rights against the *1250 Doucets and their insurer, Lafayette Ins. Co., under La. C.C. art. 1826 for Certified Cleaning’s performance of the Doucets’ obligation under the lease to maintain the roof and to repair fire, smoke, and water damage. The trial court found the remediation services provided by Certified Cleaning were covered under the general commercial coverage and property coverage of Lafayette Ins. Co.’s policy issued to the Doucets. Thus, the trial court determined the Doucets and Lafayette Ins. Co. were liable to Certified Cleaning, in solido with The Edge and Gammon, in the amount of $45,992.59.
Additionally, the trial court found Underwriters, The Edge’s insurer, was subro-gated to the rights of The Edge for money Underwriters paid under the insurance policy it issued to The Edge for loss caused by the fire. The trial court concluded that the Doucets were contractually obligated under the lease to maintain the roof, promptly make any repairs due to fire, and to maintain fire insurance on the property, which they did through Lafayette Ins. Co. The trial court determined the policy issued by Lafayette Ins. Co. to the Doucets covered the | ^damages paid by Underwriters to The Edge. As such, the trial court found the Doucets and Lafayette Ins. Co. liable to Underwriters in the amount of $47,775.17.
The trial court also found the Doucets and Lafayette Ins. Co. liable to the Edge in the amount of $90,680.48 for property damage it suffered as a result of the fire and which was not paid by its insurer. The trial court did not indicate whether this amount was based on contractual liability under the lease or on the vicarious liability and independent negligence of the Doucets, which we reversed in our initial opinion.
Paragraph 10 of the lease contract between the Doucets and the Turf Club provides in pertinent part, “Any sub-lessee occupying any part of this space, shall buy [sic] the act of subletting formally or informally, assume all obligations of Lessee, whether or not Lessor knew of or approved or disapproved of such sub-letting.” Thus, the provisions of the lease apply to The Edge, as a sublessee.
Under the lease, the Doucets were responsible for maintaining the roof and were obligated to repair the premises in the event the premises were damaged by fire. The Doucets were also required to maintain fire insurance on improvements in and on the premises, except removable installations which the lessee would be permitted to remove at the expiration of the lease. As lessee, The Edge was required to maintain a general liability insurance policy covering property damage to the leased premises.
The lease also contained a subrogation clause, which stated:
28. SUBROGATION: Neither the Lessor nor the Lessee shall be liable to the other for the loss arising out of damage to or destruction of the leased premises, or the building or improvements of which the leased premises are a part thereof, when such lost [sic] is caused by any of the perils which are or could be included within or are insured against by a standard form of fire insurance with extended coverage, including sprinkler leakage insurance, if any. All such claims for any and all loss, however caused, hereby are waived. Said absence of liability shall exist whether or not the damage or destruction is caused |fiby the negligence of either lessor or I r [sic] by any of their respective agents, servants or employees. It is the intention and agreement of the Lessor and the Lessee that the rentals reserved by this lease have been fixed in contemplation that each party shall fully provide *1251 his own insurance protection at his own expense, and that each party shall look to his respective insurance carriers for reimbursement of any such 1038 [sic], and further, that the insurance carriers involved shall not be entitled to subrogation under any circumstances against any party to this lease. Neither the Lessor nor the Lessee shall have any interest or claim in the other’s insurance policy or policies, or the profit thereof, unless specifically covered therein as a joint assured.
It is this paragraph upon which the Dou-cets rely to support their position that the parties mutually waived their right to sub-rogation and, thus, the trial court erred in finding them liable to Certified Cleaning and Underwriters.
Louisiana Civil Code article 1825 defines subrogation as “the substitution of one person to the rights of another.” A subrogee can have no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor. Gray Ins. Co. v. Old Tyme Builders, Inc., 03-1136 (La.App. 1 Cir. 4/2/04), 878 So.2d 603, 607; Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, 1042. Therefore, the rights of Certified Cleaning and Underwriters against the Doucets depend on the interpretation of the subrogation clause.
A lease is a contract between the parties. La. C.C. art. 2668. A contract must be interpreted in light of the common intent of the parties. La. C.C. art. 2045. If the words of a contract are “clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent.” La. C.C. art. 2046. Each provision of a contract must be interpreted in light of the other provisions, so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. When ambiguity exists in a contract, the ambiguity is to be construed against the party providing the text. La. C.C. art. 2056. See also, Lifemark Hospitals of Louisiana, Inc. v. Gulf South Medical and |6Surgical Institute, Inc., 03-1122 (La.App. 5 Cir. 1/27/04), 865 So.2d 903, 907; F & G Investments, L.L.C. v. 1313 Hickory, Ltd., 01-989 (La.App. 5 Cir. 1/15/02), 807 So.2d 1004, 1005.
The trial court found the Doucets liable to Certified Cleaning for $45,992.59 on the basis Certified Cleaning was subrogated to the rights of The Edge. The trial court reasoned that the Doucets were obligated under the lease to repair fire damage to the property. Under the terms of the lease, the Doucets were required to maintain fire insurance on the property and were obligated to repair any fire damage to the property.
“A waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.” Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213, 1216. We do not find the waiver clause relieved the Doucets of their obligation to repair the fire damage to the property. The Edge’s voluntary action of hiring Certified Cleaning to remediate the fire damage cannot be considered a knowing and intentional relinquishment of a known right to have the Doucets repair the fire damaged property. The waiver language is clear that the parties agreed to waive any losses each would suffer as a result of damage to the property. They did not agree to waive the Doucets’ responsibility to repair the premises. Thus, we affirm that portion of the trial court’s judgment finding the Doucets liable, in solido with *1252 The Edge and Gammon, to Certified Cleaning in the amount of $45,992.59.
The trial court also rendered judgment against the Doucets in favor of the Underwriters for $47,775.17 on the basis Underwriters was subrogated to The Edge’s rights against the Doucets for damage Underwriter paid under the insurance 17policy it issued to The Edge. Underwriters, as subrogee, can have no greater rights than The Edge.
Under the lease, The Edge was required to maintain a general liability insurance policy, which it did through Underwriters. According to Underwriters, this insurance policy insured The Edge for loss of contents, but not structural damage, up to $50,000 minus a $1,000 deductible. As a result of the fire, Underwriters paid The Edge $47,775.17 for loss of contents and improvements made by The Edge, which included a cash register system and a video camera system. Underwriters did not pay The Edge any amount for building repairs.
Under the mutual waiver clause of the lease, contained in paragraph 28, The Edge agreed to waive any claim against the Doucets for losses it suffered as a result of damage or destruction of the leased premises. As a result of the fire, The Edge suffered loss of its personal property on the premises, including among other things bar stools, televisions, drinking glasses, food and paper products, DJ equipment and lighting, cash register system, video camera equipment, and beverage air coolers. These losses were the exact things the parties agreed to waive against each other. We find the mutual waiver clause precludes Underwriters from recovering from the Doucets through subrogation.
The trial court further awarded The Edge $90,680.48 for property damage it suffered as a result of the fire and which was not paid by Underwriter. It is unclear how the trial court calculated this amount of damages. At trial, Mr. Maenza testified regarding money he paid to repair and replace various items damaged as a result of the fire. These items included costs related to structural repairs and to replacing personal property. These receipts were offered into evidence as Edge Exhibits 1-26, and totaled $86,000.54. Additionally, Mr. Maenza testified he lost approximately $75,000 in profits during the time The Edge was not operating | ^because of the fire. Thus, The Edge showed losses in the total amount of $161,000.54. Of these losses, Underwriters paid $47,447.17, leaving a balance of $113,225.37. However, under the lease, The Edge waived its right to claim losses it suffered as a result of the fire from the Doucets, which includes loss of personal property and profits.
To the extent the trial court’s judgment in favor of The Edge against the Doucets includes amounts related to The Edge’s loss of personal property and profits, we find the trial court erred. Accordingly, because we cannot ascertain from the record which of the receipts relate to replacement of personal property for which The Edge is liable and those which relate to structural repairs for which the Doucets are liable, we vacate that portion of the judgment in favor of The Edge against the Doucets in the amount of $90,680.48 and remand the matter for an evidentiary hearing to determine which of the receipts contained in The Edge’s exhibits 1-26 are related to building repairs for which the Doucets are liable.

DECREE

For the reasons stated in our original opinion and those discussed above, we reverse that portion of the trial court’s April *1253 30, 2010 judgment finding the Doucets vicariously liable and independently liable for negligent hiring. We further reverse that portion of the judgment in favor of Underwriters against the Doucets in the amount of $47,447.17. We affirm that portion of the judgment in favor of Certified Cleaning against the Doucets, in solido with The Edge and Gammon, in the amount of $45,992.59. Additionally, we vacate that portion of the judgment in favor of The Edge against the Doucets in the amount of $90,680.48 and remand the matter for an evidentiary hearing to determine what portion of that amount is related to building repairs, for which the Doucets are liable, as opposed |flto damages relating to personal property and personal losses, for which The Edge is liable.

AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS