JOHNSON, J.,
dissents with reasons.
|,I, respectfully, dissent from the majority opinion for the following reasons.
First, I find that Choices’ argument that it properly prorated Ms. Grady’s vacation pay at a rate of 0.77 hours for every week worked pursuant to the employment manual is without merit. Upon being hired by Choices, employees were given a copy of the company’s employment manual[1] that included the policies regarding vacation pay. The manual stated that full-time employees who worked, at least, 40 hours per week were eligible for paid vacation time. The manual further provided,
*47 All vacation time must be used by December 31 in the year that it is earned. Unused vacation time may not be accumulated and carried over to the next year. If an employee earns vacation time during the year, the employee must take the vacation before the end of the year.
Pursuant to the manual, all new employees were subject to a 180-day orientation period before being eligible for vacation pay. Under the “New Employees” section, the manual provided a list indicating available vacation time for specific orientation period completion timeframes, e.g., if the orientation was completed by October 15th during the first year of employment, then 24 hours would be available to the employee. The manual further provided,
|2If you were hired prior to July 1 of any calendar year, you will be eligible for the available vacation shown above to be used by the end of the calendar year in which you were hired. You will be eligible for 40 hours of vacation effective the first day of January following the date of hire.
The vacation pay provisions of the manual also included a section entitled, “Other Employees.” That particular section provided, in pertinent part:
Other employees who have been with the company for more than one year are covered by the following procedures:
Each January 1, you are eligible for paid vacation time based upon the number of years of accumulated service that you will complete during the year. For instance, if you were hired on September 1[,] 1986, then during the calendar year of 1995, you will have 9 hours of accumulated service.[2]
⅜ * *
The company allows its employees to use their whole year’s worth of vacation beginning each January 1. We do this because we believe the employee will be with us the entire year. However, paid vacation is something earned over time. Should an employee leave our company before December 31, his or her vacation will be prorated by the number of weeks she or he has worked during the year. If less time is used than is earned, the employee will be paid for that unused time. If more time is used than earned, the pay received for that time will be deducted from the employee’s final pay, according to the following probation schedule.
Under the “Other Employees” section, the manual also contained a subsection entitled “Probation Schedule” that listed the number of vacation hours an employee could earn per week worked based upon the various hours of eligible vacation pay. The section provided, in particular, “[i]f eligible for 40 hours of vacation, one earns 0.77 hours per week worked.”
On February 23, 2010, Choices hired Ms. Grady as a licensed practical nurse. On the same date, Ms. Grady was provided a copy of Choices’ manual for which she signed a receipt and acknowledgement form. Ms. Grady’s orientation period ended on August 22, 2010. According to the applicable timeframe listed in the manual for completion of the orientation period, Ms. Grady was eligible for 24 |Rhours of vacation pay effective on August 23, 2010. She used the 24 hours of vacation pay on October 20-22, 2010. On January 1, 2011, *48 Ms. Grady was eligible for 40 hours of paid vacation time. She was eligible for the 40 hours of vacation time under the “New Employees” section of the manual because she had not yet been employed with Choices for an entire year.
The “New Employee” section explains the number of hours of vacation time which a new employee is eligible for the following year; however, that section is completely devoid of any language referring to the proration of any vacation pay based upon the length of employment. That particular proration language is included under the “Other Employees” section, which was applicable to employees who had worked with the company for more than one year as of January 1, 2011. Thus, the provisions listed under the “Other Employees” section of the manual did not apply to Ms. Grady. Because the language used in each of the sections of the employment manual is clear and explicit and lead to no absurd consequences, no further interpretation in search of the parties’ intent should have been made by the majority opinion. See, Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co., 10-948 (La.App. 5 Cir. 5/31/12); 96 So.3d 1248, 1251.
Therefore, pursuant to the clear and unambiguous language in its employment manual, I find that Choices was not entitled to prorate Ms. Grady’s vacation pay at a rate of 0.77 hours per every week worked. Next, I find Choices’ “use it or lose it” policy was improperly applied to the payment of Ms. Grady’s vacation pay.”
La. R.S. 23:631 provides, in pertinent part:
A.(l)(a) Upon the discharge of any laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
_L * * *
D.(l) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
In addition, La. R.S. 23:634 provides, in pertinent part:
A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
According to the rate of eligible vacation hours listed in the employment manual, Ms. Grady was a new employee eligible for 40 hours of vacation time effective on January 1, 2011. Those hours had to be used prior to the end of 2011. The language under the “New Employee” section did not state that the eligibility for the 40 hours of *49 vacation time was a mere gratuity given by Choices to the employees. No other conditions or limitations were placed on the new employees for eligibility for those hours. Essentially, Ms. Grady simply had to be hired by Choices prior to July 1, 2010 and remain employed with the company in order to have received the 40 hours of vacation time on January 1, 2011. Pursuant to the employment manual, Ms. Grady had to schedule[3] and use those vacation hours by December 31, 2011 because they could not be carried over to the next year; however, she did not use any of the 40 hours prior to her discharge. When Ms. | ^Grady’s employment ended on April 13, 2011, Choices determined that she had forfeited 27 hours of her vacation pay that she had accrued as of January 1st and refused to pay for those remaining hours.
After review, I find that Choices violated La. R.S. 23:631 and 23:634 by failing to compensate Ms. Grady for her remaining 27 hours of vacation pay. In arriving at this conclusion, I take my guidance from the Louisiana Supreme Court’s interpretation of the Louisiana Final Wage Act in Wyatt v. Avoyelles Parish School Board, 01-3180 (La.12/4/02); 831 So.2d 906. In that ease, the supreme court reviewed a similar “use it or lose it” policy where each employee of the School Board earned annual leave at a rate based on the years of service for every year of employment. The days earned in a certain year could not be used until the following year. Those days that were earned in the previous year that were not used by June 30 of the following year could not thereafter be used and were considered “lost.” At the times of retirement for each of the employees, the School Board withheld the payment of various hours of annual leave to the employees.
Although the supreme court concluded the School Board’s “use it or lose it” policy was not per se illegal, the court found the School Board’s failure to compensate the employees for their accrued right to unused vacation pay earned under the terms of the policy violated the statutory provisions. The court held:
Pursuant to La. R.S. 23:631(D), vacation pay is “an amount then due” if, according to the employers stated vacation policy, the employee is eligible for and has accrued the right to take vacation time with pay and the employee has not taken or been compensated for the vacation time as of the date of his resignation. Subsection (D) cannot be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
Similarly, La. R.S. 23:634 prohibits an employment contract which requires the forfeiture of “wages” upon resignation or discharge. Accrued vacation time is “wages.”
Id. at 912-913. (Internal citations omitted).
In concluding that the School Board violated La. R.S. 23:631 and 23:634 through its failure to compensate the employees, the court reasoned:
At the time of their retirement, plaintiffs had only accrued the right to unused annual leave they had earned in the previous year and any annual leave they earned during the year of their retirement. Thus, the Board was obligated under La. R.S. 23:631 to compensate plaintiffs for this amount of unused annual leave they had accrued prior to *50 their retirement. Any failure to compensate plaintiffs for this amount of accrued unused leave was in violation of La. R.S. 23:631.
| rJd. at 914.
In the case at bar, Ms. Grady was eligible for 40 hours of vacation time. Pursuant to the employment manual, she was eligible for those hours due to the fact that she had been employed with Choices prior to July 1, 2010. On January 1, 2011, Ms. Grady had accrued the right to either use and/or schedule to use (if she intended to use more than four days of leave) any or all of those eligible hours of vacation pay. Like the employees in Wyatt, when her employment ended with Choices, Ms. Grady was entitled to payment for the unused hours of vacation pay she actually earned in 2010. (See, Wyatt at 914, n. 7, for an explanatory example of when leave is “actually earned.”). Thus, Choices could not force Ms. Grady to forfeit the 27 unused hours she had actually earned pursuant to the employment manual.
Furthermore, when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise; but, it is a vested right in the employee to the promised benefit. Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690, 695 (La.1991). Where an employer has a clearly established policy that vacation time is not considered wages actually earned by an employee, the employee is not entitled to 17reimbursement for unused, accrued vacation time upon discharge or resignation. Chapman v. Ebeling, 41,710 (La.App. 2 Cir. 12/13/06); 945 So.2d 222, 226. However, in the absence of a clear written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not a wage, accrued but unused vacation time is a vested right for which an employee must be paid upon discharge or resignation. Id., citing Wyatt, supra.
As mentioned earlier, the employment manual for Choices did not specify that the vacation pay for new employees was nothing more than a mere gratuity and not a wage. Thus, the 40 hours of vacation time was a promised benefit from Choices for Ms. Grady’s continued employment with the company. Despite Choices’ argument that Ms. Grady had to earn the 40 hours of vacation pay during 2011 at a rate of 0.77 hours worked per week, the 27 hours that were remaining on the day of Ms. Grady’s discharge were already “actually earned” and were a vested right that should have been paid to her.
After a de novo review, I find that Ms. Grady was entitled to summary judgment as a matter of law in her favor on the issue of payment of vacation pay. In following the interpretation of the Louisiana Final Wage Act set forth in Wyatt, supra, and other applicable jurisprudence, I find that Choices violated La. R.S. 23:631 and 23:634 when it forced Ms. Grady to forfeit the remaining hours of accrued vacation pay she became eligible for on January 1, 2011. Therefore, it is my opinion that Ms. Grady is entitled to payment of $486.00 for the remaining 27 hours of vacation pay. Additionally, I find that Ms. Grady is entitled to the penalties and attorney’s fees awarded to her by the trial court because Choices refused to pay Ms. Grady the amount due to her under the terms of its own “use it or lose it” policy.

. Both Choices and Ms. Grady attached copies of selected pages of Choices' employment manual to memorandum to the lower court. There are slight differences between the two manuals. However, when I reference the employment manual throughout this dissent, I am referring to the manual submitted by Ms. Grady because it was the one in effect during the time of her employment. The manual submitted by Choices did not take effect until August 1, 2011, which was a few months after Ms. Grady’s employment had ended.

. It is questionable as to whether the calculation of the dates and hours in the example is correct.

. Under the "Vacation schedule" section of the policy, employees were required to submit vacation requests consisting of four or more days no later than January 31 of the same year in which the vacation was to be taken. The policy further stated that it was not necessary to schedule vacations that were fewer than four days by January 31.