711 So.2d 288 (1997)
Christina Jean Shepard and Lewis Luke SHEPARD, Plaintiffs-Appellants,
v.
PHYCOR OF RUSTON, INC., Defendant-Appellee.
No. 29181-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*290 Blackwell, Chambliss, Henry, Caldwell & Cagle by Sam O. Henry, III, West Monroe and Bryant H. Graves, Baton Rouge, for Plaintiffs-Appellants.
R. Wayne Smith, Robert W. Levy, Ruston, for Defendant-Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
PEATROSS, Judge.
Plaintiff Christina Jean Shepard appeals from an adverse trial court judgment in her suit to enforce an employment contract against Phycor of Ruston, Inc. ("Phycor"). She and her former husband, Lewis Luke Shepard, also appeal from the judgment rendered against them in Phycor's reconventional demand. For the reasons assigned below, we affirm the portion of the trial court judgment dismissing Ms. Shepard's principal demand and reverse and vacate the judgment on the reconventional demand.

FACTS
Phycor, was a subsidiary of Phycor, Inc., a management company that entered into partnerships with physicians or groups of physicians to assist them in managing their practices. Phycor was a partner with the physicians of the Green Clinic in Ruston, Louisiana, and was the administrative arm that hired personnel other than doctors, i.e., the support staff.
Following her 1991 graduation from Northeast Louisiana University with a degree in radiologic technology, Ms. Shepard interviewed with Phycor's personnel/business administrator, William Schneider. He told her the company needed a registered diagnostic medical sonographer. In order to qualify for such a position, Ms. Shepard required additional training.
Pursuant to their discussion, it was decided that Ms. Shepard would attend a one-year course at the Institute of Ultrasound Diagnostics in Mobile, Alabama. Phycor agreed to pay her tuition and book fees in the sum of $3,750, while Ms. Shepard bore the other costs during her year of academic study. At the conclusion of her study, she would enter Phycor's employment for a period of three years beginning July 15, 1992. Her rate of compensation would be determined when she commenced work in accordance with her experience and training.
Ms. Shepard signed an employment contract drawn up by Phycor's counsel at the instruction of Mr. Schneider. It provided, in relevant parts:
WHEREAS, Employer is willing to provide financial aid to Employee to assist in her training and certification as a diagnostic medical sonographer in consideration of Employee's unconditional agreement to render services as such to Employer for a period of three years after the completion of such training;
NOW THEREFORE, in consideration of the mutual covenants and promises hereinafter set forth, Employer and Employee do now specifically agree to the following, to-wit:
* * * * * *
3. Upon Employee's qualification as a Registered Diagnostic Medical Sonographer, Employer specifically agrees that it shall employ Employee as such at Green Clinic, Ruston, Lincoln Parish, Louisiana, for a period of three years, commencing on July 15, 1992.
* * * * * *
11. Employer may terminate this contract with or without cause upon thirty (30) days written notice.
The contract was also signed by Lewis Luke Shepard, Ms. Shepard's husband at the time, binding him and their community of acquets and gains.[1]
Prior to the completion of Ms. Shepard's training, Phycor hired another registered diagnostic sonographer and it was envisioned that she would work with Ms. Shepard. The anticipated volume in ultrasound diagnostics, however, failed to materialize, and Phycor concluded that a second registered diagnostic sonographer was not economically feasible. At a meeting between Mr. Schneider and Ms. *291 Shepard on June 22, 1992, she was informed of the situation. Pursuant to their discussion at this meeting, they agreed that the original 30-day period provided in paragraph 11 of the employment contract would be extended to 60 days, and Ms. Shepard's starting date was changed from July 15 to July 6. By letter dated June 22, 1992, Mr. Schneider gave Ms. Shepard the required written notice that her employment would begin July 6, 1992, but that it would terminate when she found other employment or on September 4, 1992, whichever occurred first. In this letter, Mr. Schneider also informed her that unpaid time off for employment interviews would be arranged as needed. The letter also included the following provisions:
Your obligations to Green Clinic will terminate at the time your employment ends. You will no longer be obligated to repay educational fees or work at Green Clinic for any specific length of time.
Ms. Shepard, however, did not report to work on July 6, 1992, or thereafter. She instead brought the instant suit for breach of contract. She sought to recover all salaries she would have received during the three-year period specified in the contract. Ms. Shepard alleged that she relied on the defendant's promises to her detriment. She also requested compensation for damages she incurred in completing her part of the contract when she temporarily moved to Alabama without her family to take the year-long course. These damages included lost wages, loss of consortium, mental anguish and emotional distress.
Phycor answered and reconvened against the plaintiffs. In its reconventional demand, Phycor contended that, due to Ms. Shepard's refusal to commence work in July 1992 as required under the contract, it was entitled to recover $3,750 for the amount of the tuition and fees which it paid on her behalf.
Phycor filed a motion for summary judgment or partial summary judgment. The motion for summary judgment, which was based on the lack of ambiguity in the contract, was denied. The trial court, however, granted the partial summary judgment because nonpecuniary damages were not recoverable in this breach of contract suit since the contract was not contemplated to gratify a significant nonpecuniary interest. Accordingly, Ms. Shepard's demands for nonpecuniary loss (such as mental anguish) were dismissed.
A bench trial was held in September 1995, and the court's written reasons for judgment were rendered in February 1996. The trial court ruled in favor of Phycor on the main demand. In so doing, the court rejected Ms. Shepard's argument that Phycor's option to terminate employment with 30-day's notice found in paragraph 11 was applicable only after expiration of the contract's three-year term of employment. The court found that the most logical interpretation of the contract as a whole was that Phycor would pay Ms. Shepard's tuition and fees in consideration for her promise to work for the company for a period of up to three years, subject to Phycor's right to terminate the agreement upon 30 days' written notice; thus, the term of employment in paragraph 3 was qualified by the termination clause in paragraph 11.
As to the reconventional demand, the trial court found that under the contract, as modified by the parties, Ms. Shepard was obligated to present herself for employment on the agreed upon date and to work for the period specified. According to the trial court, her failure to do so constituted a failure of performance on her part. Consequently, the court rendered judgment against her and her former husband and in favor Phycor in the amount of $3,750.
Ms. Shepard and her former husband appeal.

PRINCIPAL DEMAND

Law
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art. *292 2047. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
The courts are bound to enforce the contract as written. Cooper v. Olinde, 565 So.2d 978 (La.App. 1st Cir.1990), writ denied, 569 So.2d 966 (La.1990); Bond v. Allemand, 632 So.2d 326 (La.App. 1st Cir.1993), writ denied, 94-0718 (La. 4/29/94), 637 So.2d 468.
It is not within the province of the courts to relieve parties of their bad bargains. Kenny v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Hanover Petroleum Corporation v. Tenneco Inc., 521 So.2d 1234 (La.App. 3d Cir.1988), writ denied, 526 So.2d 800 (La.1988).

Discussion
When interpreted in accordance with the appropriate Civil Code articles, we find the employment contract between plaintiffs and Phycor to be an essentially straightforward document. Words are given their ordinary meanings, and sections of the contract are read in a manner whereby each provision is given effect and the meaning suggested by the entire contract. Phycor agreed to pay the educational expenses of Ms. Shepard, who in turn agreed to remain in Phycor's employ for three years, a means by which Phycor could recoup its financial investment in Ms. Shepard's education. The contract, however, also specifically and plainly provided that Phycor could terminate the contract with Ms. Shepard "with or without cause" upon written notice of 30 days. Like the trial court, we find that this provision qualified the term of employment.
Such a provision in a contract may be acceptable. See Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48 (1961), in which the court upheld a contract giving an employee the unqualified right to cancel a contract with a five-year term upon two weeks notice.[2] See also Caddo Parish School Board v. Cotton Baking Company, Inc., 342 So.2d 1196 (La.App. 2d Cir.1977). Furthermore, La. C.C. art. 1770 requires that a resolutory condition that depends solely on the will of the obligor be fulfilled in good-faith. See Comment (f) to La. C.C. art. 1770. The testimony demonstrated that Phycor's decision to terminate Ms. Shepard's contract was premised on a good faith business decision.
Contrary to Ms. Shepard's assertion, the contract which she signed cannot be equated with a contract of adhesion as defined in Golz v. Children's Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976). According to the Louisiana Supreme Court, the broad definition of an adhesion contract is "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." The contract in the instant case was drafted to specifically memorialize the agreement negotiated by Ms. Shepard and Mr. Schneider at their meeting. It contained no "small print." The completed document was mailed to Ms. Shepard, who read it and discussed it with several persons, including her husband and her father, a banker. She signed the contract and returned it to Phycor without any apparent comments, questions or complaints.
We agree with the trial court's resolution of the principal demand. Accordingly, the trial court judgment dismissing Ms. Shepard's demands against Phycor is affirmed.

RECONVENTIONAL DEMAND
Ms. Shepard and her former husband appeal the adverse ruling on Phycor's reconventional *293 demand. Finding merit in their argument, we reverse this portion of the trial court judgment.
We conclude from our reading of Mr. Schneider's letter of June 22, 1992, that Phycor was well aware that its economic decision to dispense with Ms. Shepard's services had placed her in a delicate situation. In an obvious effort to appease and recompense her in some fashion, Phycor made various accommodations in Ms. Shepard's favor, including whatever unpaid time off she required for job interviews. It extended the 30-day period of required contractual notice to 60 days for her financial benefit. It provided that her employment would terminate at the end of the 60-day period, or sooner if she found employment elsewhere. Phycor then specifically relieved her of her obligations to it, i.e., the repayment of her educational fees or working at the Green Clinic for a prescribed period of time.
Phycor contends that it was entitled to recoup some of its educational expenditures through Ms. Shepard's work at the Clinic during the 60-day period. By the terms of its own amended agreement with Ms. Shepard, however, had she been fortunate enough to secure other employment before her start date in July 1992, she would not have been required to work for Phycor at all and she would have still been relieved of her obligations.
To allow recovery by Phycor on its reconventional demand under the circumstances presented in this case would be grossly inequitable. See La. C.C.P. art. 2164. We, therefore, reverse and vacate that portion of the trial court judgment.

CONCLUSION
The judgment of the trial court dismissing Ms. Shepard's demands is affirmed. The judgment on the reconventional demand, however, is reversed. Costs are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] By the time of trial, they were divorced, and the plaintiff had remarried.
[2] In their reply brief, plaintiffs attempt to distinguish Long v. Foster from the facts presented in the present case on the grounds that in Long both the employer and the employee reserved "a privilege to cancel [the] agreement at any time upon two weeks notice." Plaintiffs fail to state, however, that the privilege to cancel afforded to the employee in Long was unrestricted, while the privilege afforded to the employer was conditional on "any Union [being] certified and recognized as a bargaining agent for any unit of employees which includes the [employee]."