945 So.2d 222 (2006)
Judy CHAPMAN, Plaintiff-Appellant,
v.
Robert L. EBELING, Jr., M.D., Northeast Louisiana Radiation Oncology, L.L.C., and William D. Zollinger, M.D., Defendants-Appellees.
No. 41,710-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*224 C. Bryan Racer, Monroe, for Appellant.
Theus, Grisham, Davis & Leigh by Robert J. Bozeman, Monroe, for Appellees.
Before CARAWAY, MOORE and LOLLEY, JJ.
CARAWAY, J.
Plaintiff/employee sued her former employer and his medical clinic for defamation after the former employer allegedly made unfavorable statements about plaintiff's work performance to a reference checker. Plaintiff also sought compensation payment for unused vacation time, based upon the employer's policy of awarding four weeks' annual paid vacation, and penalties and attorney fees for denying that wage benefit. Following a trial, the trial court denied all of plaintiff's claims and this appeal ensued. Finding no manifest error in the trial court's ruling, we affirm.

Facts
For approximately three and one-half years, Judy Chapman ("Chapman") was employed as the office and billing manager of Northeast Louisiana Radiation Oncology, L.L.C. ("the clinic"), the medical clinic of Robert Ebeling, Jr., M.D. ("Dr. Ebeling"). On February 16, 2000, Chapman gave Dr. Ebeling two-weeks' written notice of her resignation. The following day, Chapman reported sick and stayed home. Because he believed Chapman would not return to work, Dr. Ebeling called Chapman and told her that there was no reason for her to come back. The clinic paid Chapman her wages for the entire month of February. On April 13, 2000, Chapman formally demanded severance pay and *225 compensation for unused vacation time and overtime.
When she quit, Chapman's 2000 vacation time was unused. The trial testimony confirmed that clinic employees received four weeks of annual paid vacation.
In June 2000, Chapman obtained the services of an employment agency. When no offers were forthcoming, she learned that she had received poor work history references. Chapman suspected the clinic as the source and hired a professional reference checker. When the reference checker contacted Dr. Ebeling, he described Chapman as "a little emotionally unstable," and also faulted her for not telling co-workers how to perform tasks, falling behind in her work, and giving abbreviated notice of her resignation. He also blamed Chapman for the high turnover rate of employees at his clinic.
In 2002, Chapman sued Dr. Ebeling and the clinic for compensation of wages and penalties and attorney fees for the wrongful denial of wages. Chapman also included a defamation claim.
After a bench trial, the trial court denied Chapman's wage claims, finding she failed to show that a "stated vacation policy" existed entitling Chapman to four weeks vacation pay, and further, the court determined that Chapman was adequately paid for her 2000 vacation time. The court rejected Chapman's defamation claim on the grounds of inadequate proof that Dr. Ebeling's statements were either false or made with malicious intent. The trial court also viewed the statements as privileged. This appeal by Chapman ensued.

Discussion

I.
Chapman first asserts as error the trial court's failure to award her $1,628.46 for two weeks of unpaid vacation time and penalties and attorney fees under Louisiana wage law. In so arguing, she concedes that the additional payment of two weeks of wages for time she did not work in February approximates half of the annual vacation leave.
The following statutes govern Chapman's entitlement to payment for accrued vacation time. In relevant part, La. R.S. 23:631 provides:
A.(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
* * *
D.(1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Additionally, La. R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their *226 wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
These statutes are designed to compel prompt payment of wages when an employee is discharged or resigns. Wyatt v. Avoyelles Parish School Bd., 01-3180 (La.12/4/02), 831 So.2d 906. They are penal in nature and must therefore be strictly construed and yield to equitable defenses. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, citing Mason v. Norton, 360 So.2d 178, 180 (La.1978).
Accrued vacation time is an "amount then due under the terms of employment" and constitutes wages under La. R.S. 23:631 which are due upon resignation by the employee. Wyatt, supra. Subsection (D) of La. R.S. 23:631 cannot be interpreted to allow forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy. Id. Where an employer has a clearly established policy that vacation time is not considered wages actually earned by an employee, the employee is not entitled to reimbursement for unused, accrued vacation time upon discharge or resignation. However, in the absence of a clear written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not a wage, accrued but unused vacation time is a vested right for which an employee must be paid upon discharge or resignation. Wyatt, supra.
The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. Quebedeaux v. Dow Chemical Co., 01-2297 (La.6/21/02), 820 So.2d 542. Additionally, the foregoing statutes on wage payments supplement the employment relationship. Yet, absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for discharge. Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2d Cir.1982).
Under Louisiana law, the formation of a valid and enforceable contract requires capacity, consent, a certain object, and lawful cause. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. Crowe v. Homesplus Manufactured Housing, Inc., 38,382 (La.App.2d Cir.6/21/04), 877 So.2d 156. The existence or nonexistence of a contract is a question of fact not to be disturbed unless clearly wrong. Id.
The evidence revealed no written policy concerning employees' vacation pay. Nevertheless, Dr. Ebeling acknowledged a policy, as follows:
Q. You indicated she was going to get four weeks of paid vacation. Correct?
A. Yes.
Q. So each new calender year a new four weeks would become an entitlement of hers to take off. Right?
A. Yes.
* * *
Q. Did you have a policy within the office that when an employee's employment ended that that employee would be paid for any unused vacation time?
A. No.
*227 On cross examination, Dr. Ebeling explained further regarding his employees' vacation time:
Q. So as of January 1, Mrs. Chapman or some other employee, if they needed to and it could be worked out with the schedules of other people so that the work could be accomplished and it wasn't a hindrance on the office, could take four consecutive weeks of vacation?
A. Theoretically, yes. No one had ever done that.
* * *
Q. So your employees are entitled to take their vacation time, assuming it can be scheduled, as of January 1 of each calendar year?
A. That was never specifically written anywhere. The general assumption was that you wouldn't get to the first of the year and take off four weeks because that would disrupt the office. Showing up on January 1, I never assumed, entitled you to four weeks at that point. It was assumed it would be spread through the year.
In her testimony, Chapman acknowledged the allowance of four weeks paid vacation each year. Nevertheless, she indicated in the following exchange that the vacation policy of the clinic did not formally address her entitlement to unused annual vacation pay upon resignation from employment:
Q. Okay. So there was not any type of contract, either verbal or written between you and Dr. Ebeling, the clinic with regard to any specific amount of money that you might receive when your employment ended.
A. No.
The trial court considered the foregoing testimony for a determination of the facts regarding the parties' understanding or "meeting of the minds" on the issue of vacation pay. It found no stated policy controlling vacation pay for the present situation.
From the above testimony, the clinic's policy and practice of allowing its employees to schedule and receive four weeks of paid vacation each year during their employment was clear. With deference under manifest error review to the trial court's factual determinations, we agree that the employees' entitlement to unused annual vacation pay after their employment terminated was unclear and unexpressed in any written policy. Three possibilities for answering this quandary would be (i) payment upon resignation of four weeks' annual vacation pay; (ii) payment of an accrued portion based on the pro rata amount of time employed during the year of termination; or (iii) no payment for unused annual vacation time not taken prior to resignation. Without a clear showing of either an employment agreement or policy specifying one of these preferences over another, the suppletive force of La. R.S. 23:631(D) is all that regulates the employee/ employer relationship when Chapman resigned. That statute awards vacation pay at termination based on the second option listed above.
Applying La. R.S. 23:631(D) here allows Chapman to claim a small portion of the annual vacation pay because she worked only the first six weeks of the year. On an accrual basis, she was therefore owed much less than half of the compensation for vacation which she received. Thus, there is no showing that the statutory allowance regarding vacation pay was violated, and we agree with the trial court's factual finding that there was no employment policy between the parties otherwise providing a greater entitlement to vacation pay upon employee resignation. *228 From these determinations, we affirm the trial court's ruling.

II.
The second assignment of error concerns the trial court's denial of Chapman's alleged defamation claim. Dr. Ebeling admitted his statements to Chapman's reference checker, but the trial court found no defamation was proven.
Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706, 715. A successful claimant in a defamation action must establish the following elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) injury. Hines v. Arkansas Louisiana Gas Co., 613 So.2d 646 (La.App. 2d Cir.1993), writ denied, 617 So.2d 932 (La.1993). If even one of the required elements of the tort is lacking, the cause of action fails. Costello, supra; Cooksey v. Stewart, 41,336 (La.App.2d Cir.8/23/06), 938 So.2d 1206; Kosmitis v. Bailey, 28,585 (La.App.2d Cir.12/20/96), 685 So.2d 1177. Chapman alleges that the statements made were defamatory per se. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, are considered defamatory on their face, or defamatory per se. Bell v. Rogers, 29,757 (La.App. 2 Cir. 8/20/97), 698 So.2d 749; Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir.1986), writ denied, 489 So.2d 246 (La.1986). When the plaintiff proves publication of words which are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant. Id.
Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either (1) the statement was true, or (2) the statement was protected by a privilege, absolute or qualified. Costello, supra; Cooksey, supra. A conditional or qualified privilege is applicable if the communication is made in good faith on any subject matter in which the person communicating has an interest or in reference to which he has a duty to a person having a corresponding interest or duty. Aranyosi v. Delchamps, Inc., 98-1325 (La.App. 1st Cir.6/25/99), 739 So.2d 911, writ denied, 99-2199 (La.11/5/99), 750 So.2d 187. Good faith is defined as a statement made with reasonable grounds for believing its truth. Only when lack of such reasonable grounds is found can it be said that the person uttering the statement is actuated by malice or ill will. Ward v. Sears, Roebuck & Co., 339 So.2d 1255 (La.App. 1st Cir.1976); Aranyosi, supra.
Communications between a former employer and prospective employers of an employee enjoy a conditional or qualified privilege, and such a communication is not actionable when made in good faith for legitimate purposes. Butler v. Folger Coffee Co., 524 So.2d 206 (La.App. 4th Cir.1988); Alford v. Georgia-Pacific Corp., 331 So.2d 558 (La.App. 1st Cir.1976), writ denied, 334 So.2d 427 (La.1976).
Dr. Ebeling's statements assessed Chapman's professional weaknesses as he observed them. The doctor described her emotional conduct which occasionally disrupted the workplace using medical language. While such statements related to Chapman's professional demeanor, the trial court correctly ruled that they did not rise to the level of being defamatory per se.
Moreover, the statements made by Dr. Ebeling to a prospective employer enjoy a qualified privilege. Butler, supra; Alford, supra. As such, these statements are not actionable if found to have been made in *229 good faith for legitimate purposes. At trial, Dr. Ebeling testified that he believed his statements were confidential. Further, he testified that he made the statements with no intention of hurting Chapman. When questioned about characterizing Chapman's slight emotional instability, Dr. Ebeling described an incident he observed which brought him to that conclusion. He also testified that he provided positive information about Chapman's work performance during the conversation. The trial court determined Dr. Ebeling's statements were made in good faith, based upon reasonable grounds for believing their truth. The trial court's acceptance that Dr. Ebeling made the statements with no intention of hurting his former employee was a credibility determination which will not be disturbed on appeal. Accordingly, the denial of Chapman's defamation claim is affirmed.

Conclusion
For the foregoing reasons, the judgment of the trial court rejecting the demands of Chapman is affirmed at her cost.
AFFIRMED.