GAIDRY, J.
| ?This appeal involves an action by a pharmacist against a pharmacy business for penalty wages owed to him after ending his tenure working at the pharmacy. The pharmacy filed a peremptory exception of no right of action on the grounds that the pharmacist was never paid directly by the pharmacy but instead by a close corporation formed by the pharmacist under his own name. After deferring the determination of the exception to the merits, the trial court determined that such a payment arrangement did not allow the pharmacy to escape its obligation to pay the pharmacist for the services he provided. For the following reasons, we affirm the trial court’s judgment.
*223 FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff, Warren Christopher Williams (Williams), is a licensed pharmacist. On December 15, 2005, Williams began providing services for the defendant, Dutchtown Pharmacy, L.L.C. (Dutchtown). Before commencing work for Dutchtown, the parties agreed that Williams’ compensation would include: (1) a salary of $10,000.00 per month; (2) an amount of money sufficient to reimburse him for his health insurance policy premium (plus a payment of $5,000.00 for the deductible); and (3) a monthly bonus equal to 1% of the gross sales revenue for the pharmacy, calculated every three months (commencing once Dutchtown’s named location was open and operating sufficiently).
Two weeks after beginning work for Dutchtown, Williams formed Chris Williams, Inc. Williams had been advised by the owners of Dutchtown that he could save taxes by incorporating. As such, Dutchtown paid all compensation for pharmacist services (including salary and a health insurance premium reimbursement) to Chris Williams Inc., which in turn | spaid the wages to Williams personally. Chris Williams, Inc. issued the Internal Revenue Service W-2 forms to Williams for work performed at Dutchtown.
While Williams worked at Dutchtown’s pharmacy he was able to suggest his own work schedule, subject to the approval of the owners of Dutchtown. All of the deposits made into the corporate account of Chris Williams, Inc. were payments received from Dutchtown for the pharmacist services provided. Additionally, Williams never earned any income working elsewhere once Dutchtown’s pharmacy opened.
In October 2007, one of the numerous owners of Dutchtown, Mike Tinnerello, told Williams that he would be entitled to three weeks of paid vacation in 2008. On January 29, 2008, Williams stopped providing services for the pharmacy after refusing to sign an employment contract with Dutchtown.[1] Following the termination of Williams’s work for Dutchtown, his attorney sent a letter to Dutchtown requesting four weeks (one week for the year 2007, plus three weeks for the year 2008) of vacation pay and the value of Williams’s bonus from January 1, 2008 to January 29, 2008.
Williams instituted this action for unpaid wages under La. R.S. 28:631[2] and 23:632[3] on April 29, 2008. Dutchtown filed a peremptory | .¡exception of no right of action on *224 May 15, 2008 on the basis that Williams was not a proper party to bring suit under the statutes. The exception was referred to the merits. After a status conference on the matter, the district judge issued a bench trial order.
Trial was held on July 23, 2008. The trial court signed its judgment and issued written reasons for judgment on September 11, 2008, awarding Williams three weeks’ vacation pay and bonus pay in the amount of $3,500.00, finding that Williams was an employee of Dutchtown for purposes of La. R.S. 23:631 and 23:632. Williams was also awarded attorney’s fees. Dutchtown now appeals.
ASSIGNMENTS OF ERROR
Dutchtown has assigned the following errors on the part of the trial court:
1. The [tjrial [cjourt erred by overruling Dutchtown’s exception of no right of action since Williams did not receive his wages from Dutchtown.
2. The [tjrial [cjourt erred by determining that Williams had accrued and was entitled to payment for three weeks of vacation in 2008.
3. The [tjrial [cjourt erred by determining that Williams was entitled to a bonus in 2008.

Standard of Review

The determination of whether the plaintiff had a right of action raises a mixed question of law and fact. The manifest error standard of review applies to all factual findings, including a finding relating to the factual sufficiency of evidence to warrant application of a legal theory or doctrine. Barnett v. Saizon, 08-0336, p. 6 (La.App. 1st Cir.9/23/08), 994 So.2d 668, | s672. This standard of review also applies to mixed questions of law and fact, such as the issue of whether the facts found by the trier of fact trigger application of a particular legal standard. See Reed v. Wal-Mart Stores, Inc., 97-1174, pp. 3-5 (La.3/4/98), 708 So.2d 362, 364-5 and 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.14 n. 13 (1999).
In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis for the finding does not exist in the record; and (2) the appellate court must also determine that the record establishes that this finding is clearly wrong (manifestly erroneous). Hornsby v. Bayou Jack Logging, 04-1297, p. 8 (La.5/6/05), 902 So.2d 361, 366.
ANALYSIS

Exception of No Right of Action

Neither party disputes that Williams provided professional pharmacist services for Dutchtown. The only issue is whether the fact that Williams received his paychecks and employee tax’ forms from Chris Williams, Inc. precludes him from being considered an employee for the purposes of asserting claims under La. R.S. 23:631, et seq. Thus, we must determine whether Williams was in fact an employee of Dutchtown.
Dutchtown insists that it was not the employer of Williams because the pharmacy never directly paid Williams a salary or issued employee tax forms to him. According to Dutchtown, La. R.S. 23:631 and 632 do not even contemplate this indirect type of action brought against Dutchtown, but rather contemplate an action brought by a laborer against the party who actually paid his wages. We do not agree with this proposition.
| (When determining whether an employer-employee relationship exists be *225 tween two parties, the court looks to the “freedom of action and choice with respect to the undertaking in question” that the supposed employee has been given by the employer. Hickman v. Southern Pac. Transp. Co., 262 La. 102, 117, 262 So.2d 385, 390 (1972). Most importantly, the court is to examine the “control over the work reserved by the employer.” Id., 262 La. at 117, 262 So.2d at 391. The supreme court has identified a five-factor test to determine whether this relationship is one of employment in nature or that of an independent contractor:
(1) there is a valid contract between the parties;
(2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
(3) the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
(4) there is a specific price for the overall undertaking agreed upon; and
(5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
Tower Credit, Inc. v. Carpenter, 01-2875, p. 6 (La.9/4/02), 825 So.2d 1125, 1129.
All of Williams’s work was done at Dutchtown’s pharmacy, to benefit Dutch-town. Although Williams was able to set his own hours, Dutchtown still had the right to approve them. Once beginning work at Dutchtown’s pharmacy, Williams exclusively served the pharmacy, working anywhere from 40 to 55 hours a week. The record further shows that Dutchtown not only had the right to control Williams’s work but the right to supervise it as well.
17Chris Williams, Inc., significantly, was formed by Williams at the urging of Dutchtown’s owners, in order to provide supposed tax benefits to Williams. The only revenue that Chris Williams, Inc. ever received was the compensation paid by Dutchtown for Williams’s individual professional services. Williams was also authorized and, in fact, required to accrue and take vacation time based upon specific authority from Dutchtown.
Additionally, the duration of Williams’ position with Dutchtown was clearly not for any specific time. There is no need to determine whether Williams was fired or whether he resigned as the test only contemplates whether either party had the power to end the relationship. Clearly, the question as to which party actually ended the relationship is irrelevant to the determination of at-will employee status. The nonspecific duration of Williams’s work for Dutchtown’s pharmacy tends to support the finding of Williams being an employee of Dutchtown, given all the relevant factors.
Though Chris Williams, Inc. “paid” Williams his salary and issued his employee tax forms, the combined weight of the relevant factors demonstrates that Dutch-town was Williams’s actual employer in terms of ultimate control. Thus, we determine that the trial court was not manifestly erroneous in concluding that Dutch-town’s exception of no right of action was properly overruled.

Vacation Pay

Having determined that the trial court properly overruled Dutchtown’s exception of no right of action, we now must determine whether or not the trial court properly determined the value of penalty wages owed to Williams. Vacation pay is considered due to the employee if in accor *226 dance with the stated vacation policy of the employer or when both of the following apply:
|s(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
La. R.S. 23:681 (D).
Dutchtown contends that the award of three weeks of vacation time to Williams violates this statute because Williams only worked for 28 days in 2008 and thus did not accrue three weeks worth of vacation. Citing the Louisiana Supreme Court in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1359 n. 10 (La.1976), Williams points out “[t]he courts of this state have noted that forfeitures of wages are not favored under our law.” This reasoning is consistent with La. R.S. 23:631.
Dutchtown does not dispute Williams’s contention that he was entitled to vacation pay; however, Dutchtown disagrees as to the amount of vacation pay afforded to Williams. Citing Chapman v. Ebeling, 41,710, pp. 7-8 (La.App. 2nd Cir.12/13/06), 945 So.2d 222, 227, Dutchtown suggests that when a company has no written policy concerning vacation, accrued vacation time should be determined proportionally to time worked during the year in question. Though the court in Chapman also considered the other possibilities that (1) plaintiff be awarded no vacation pay or (2) plaintiff should be paid for the full year’s worth of vacation after only working a few weeks, it still determined that pro rata accrual was the only correct answer under La. R.S. 23:631(D). Id.
Though the pro rata accrual basis appears fair, the trial court determined that the entire vacation time accrued immediately when Williams began work in 2008. Though Dutchtown did not have a written policy in place, the trial court came to this determination after hearing the testimony |9of both Williams and John Smith, one of Dutchtown’s owners, that a previously fired pharmacist at Dutchtown was paid the entirety of his promised vacation instead of a proportionate share. Additionally, the court looked to Williams’s testimony, in which he stated that he had been told in October 2007 that he was entitled to three weeks of vacation for 2008 with no stipulation that it could only be taken as accrued.
Vacation leave, once promised, immediately becomes vested property of the employee to whom it was promised. Aguillard v. Crowley Garment Mfg. Co., 01-594, pp. 4-8 (La.App. 3rd Cir.2/27/02), 824 So.2d 347, 351-53, writs denied, 02-1348 (La.8/30/02), 823 So.2d 955, 02-1170 (La.8/30/02), 823 So.2d 956. Under La. R.S. 23:631(D), this leave is payable to the employee upon discharge or resignation unless the employer has a stated policy on the issue which has the effect of conditioning the right. Id. No such policy existed in the present case.
Given the foregoing, the trial court was not manifestly erroneous in determining that Williams was entitled to the entirety of his 2008 vacation pay. Though Dutch-town had no formal, written policy, the trial court concluded from the testimony that it did have an unwritten policy to award an entire year’s vacation effective January 1 of each year.

Bonus Pay

Dutchtown also appeals the trial court’s awarding of bonus pay to Williams. The trial court determined that as Williams was regularly paid a bonus of one percent (1%) of the gross sales receipts of the pharmacy every quarter based on monthly sales, he should be entitled to 1% of the *227 January 2008 sales. However, since no evidence was presented as to the gross sales of Dutchtown in January 2008, the court took an average of past monthly hnbonuses (ranging from $3,000.00 to $4,000.00) and awarded Williams $8,500.00 as a bonus for January 2008.
Dutchtown insists that the bonus was discretionary. If it is a discretionary bonus then the employee is not entitled to it if he has failed to work for the entire period applicable to the bonus. Hinton v. Owensby & Kritikos, Inc., 425 So.2d 926, 929 (La.App. 4th Cir.1983). To support this contention, Dutchtown points to the testimony of one of its owners, Michael Tinnerello, who stated that there were some quarters for which Williams received a monthly bonus and some for which he did not. Tinnerello did not award Williams the bonus for the first quarter of 2008 for numerous reasons, including the failure to provide services to Dutchtown for the entire quarter.
The court weighed this information and determined that though the bonus was termed “discretionary,” it was in fact non-discretionary. Though Williams did not receive a bonus every quarter he worked at Dutchtown, the record indicates that this was because Dutchtown was not yet established to pay the bonuses. However, once Williams received his first bonus payment, he continued to be paid 1% of the sales receipts until the bonus payment contemplating January 2008 would have been paid. Additionally, there was testimony from both Williams and John Smith that the bonuses were never awarded on a discretionary basis or performance, but on a straight formula. Thus, though Williams did not work for the entirety of the first quarter of 2008, he was in fact owed a bonus for the month he did work.
This conclusion is not manifestly erroneous as it is based on the credibility of the numerous witnesses as determined by the trial court. Therefore, we affirm the award of $3,500.00 to Mr. Williams for his work from January 1 to January 28, 2008.
| nAttorney Fees
Under La. R.S. 23:632, reasonable attorney fees are to be awarded in the event of a well-founded suit for unpaid wages. Thus we affirm the trial court’s award of attorney’s fees to Williams.
As for Williams’s claim for additional attorney fees on appeal, however, it is well settled that when an appellee neither appeals nor answers the appeal, he is not entitled to additional attorney fees for legal services rendered on appeal. See La. C.C.P. art. 2133; Zavala v. St. Joe Brick Works, 07-2217, p. 10 (La.App. 1st Cir.10/31/08), 999 So.2d 13, 21. Although Williams requested additional attorney fees in his appellate brief, he did not properly request them by answering this appeal or filing his own appeal. We therefore decline to award any additional attorney fees in connection with this appeal.
CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant-appellee, Dutch-town Pharmacy, L.L.C.
AFFIRMED.
DOWNING, J., concurs.
McCLENDON, J., concurs in part and dissents in part and assigns reasons.

. The trial court apparently did not resolve the issue of whether Williams resigned from Dutchtown or was fired for failure to sign the employment contract. That determination, however, is unnecessary for resolving the ultimate issue in question.

. Louisiana Revised Statutes 23:631(A)(l)(a) and (b) generally provide that upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the employer to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days after discharge or separation, whichever occurs first.

.Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or the employee after three days shall have elapsed from time of making the first demand following discharge or resignation.