STEWART, J.
 

 11 When her nurse practitioner position was eliminated four months after she was hired, the plaintiff, Rebecca Clark, sued the defendant, Christus Health Northern Louisiana d/b/a Christus Schumpert (hereafter “Schumpert”). Alleging that she had an employment contract for a fixed term of two years, Clark asserted a claim for breach of contract and an alternative claim of detrimental reliance. The trial court denied both claims upon finding that the parties had not entered a fixed term employment contract. Clark now appeals. For the following reasons, we affirm.
 

 
 *1137
 
 FACTS
 

 Jean Pitts, the clinical program manager for Schumpert’s Cancer Treatment Center (“CTC”), contacted Clark in September 2007 to inform her that a nurse practitioner position had become available in the GYN oncology department. Clark had previously done a clinical rotation at Schumpert while completing her nurse practitioner studies and had completed an online job application in March 2007. When Pitts contacted her about the CTC position, Clark was employed as a nurse practitioner pursuant to a “Collaborative Practice Agreement” with Dr. Edward R. Coleman and Dr. Mark F. Dollar at their clinic in West Monroe. The agreement had a 90-day term beginning on July 24, 2007, and ending on October 24, 2007, at which time it was subject to amendment and renewal. Clark returned Pitts’ call and began discussions about the job at the CTC.
 

 Clark learned that one physician, Dr. Connor, had left the CTC and that a new GYN oncologist, Dr. Ricky Owers, had just started. Dr. Owers had recommended hiring a nurse practitioner to assist with the CTC’s [2patient load. Clark met with Dr. Owers to find out more about the job and to tour the CTC. She was interested in the position if the money was right.
 

 Pitts first offered Clark the position at a salary of $75,000 a year. Clark turned it down. Clark then negotiated with Jennifer Varnadore, the CTC’s new director. After a number of conversations with Var-nadore, Clark agreed to accept the position at a salary of $81,000, plus additional on-call pay, a sign-on bonus, and reimbursement of moving expenses. None of Clark’s negotiations with Schumpert personnel addressed the issue of fixed term employment.
 

 To confirm Clark’s decision to accept the CTC job, Matthew Berg, a regional recruitment manager for Schumpert, sent her an offer letter by email on October 18, 2007. The offer letter states in relevant part:
 

 We are prepared to offer you a base salary of $81,000 annually (to be paid on a bi-weekly basis) as a Nurse Practitioner in the above stated unit. We are also prepared to offer you a sign-on bonus of $2,500, which also requires a signed commitment to remain employed at [Schumpert] for two years, as well as call pay of $75 on weekday nights and $150 on weekends. You are also eligible for up to $2500 in reimbursable moving expenses. The bonus payment is subject to applicable taxes. Your formal start dated (sic) is to be determined by you and Jennifer but to be no later than November 26, 2007.
 

 Clark signed the offer letter on October 18, 2007, indicating her acceptance of the CTC position.
 

 On Friday, October 19, 2007, Clark reported to Schumpert for a pre-employment physical, at which time she learned that Dr. Connor would be returning to the CTC and became concerned about whether her job was still available. She contacted Dr. Owers, who paged Jean Pitts, who then allegedly spoke to Carolyn Moore, Schum-pert’s Chief Operating Officer. | .According to Clark, Pitts contacted her on October 24, 2007, to say that the position was still open. Clark then notified her employers, Dr. Coleman and Dr. Dollar, that she would no longer be working at their clinic. The date coincided with the end of the 90-day term under the Collaborative Practice Agreement she had with them.
 

 On October 29, 2007, Clark became a Schumpert employee and attended orientation. Included among the forms that new employees were required to read and sign was the “HR SERVICES HANDBOOK
 
 *1138
 
 ACKNOWLEDGMENT STATEMENT,” which states in relevant part:
 

 I understand that employment with CHRISTUS Schumpert Health System may be terminated by either myself or CSHS, with or. without cause, at any time. All Associates are employed for an indefinite term.
 

 Clark signed the acknowledgment statement.
 

 On October 31, 2007, Clark was presented with and signed the “CHRISTUS SCHUMPERT HEALTH SYSTEM RECRUITMENT INCENTIVE AGREEMENT” (hereafter the “RIA”), which states in relevant part:
 

 THIS AGREEMENT is entered into between Christus Schumpert Health System (CSHS) and, Rebecca Clark, Nurse Practitioner (Appearer) ... The effective date of this agreement is 10/29/07. Whereas CSHS wishes to provide financial incentive to Appearer to become and remain an employee of CSHS and Appearer wishes to take advantage of this offer, they do hereby agree as follows:
 

 1. Appearer agrees to accept full time employment beginning 10/29/07, with CSHS as a Nurse Practitioner for a period of not less than 24 months or 4,160 hours, whichever is achieved first, continuous employment. Should the Lassociate voluntarily terminate during this 12-month
 
 [1]
 
 period, the full incentive amount will be deducted from the final paycheck. If the final paycheck(s) is not sufficient to cover the amount due, the Appearer will be required to pay the balance in full.
 

 2. Appearer will receive a recruitment incentive in the amount of $2,500. This recruitment incentive is payable in a lump sum of $2,500 after successful completion of the 90 day probationary period which is 1/29/08.
 

 3. The recruitment incentive will be taxed according to IRS guidelines.
 

 4. I understand the above conditions and authorize a pre-determined amount to be deducted from my final paycheck(s) if I do not meet these conditions.
 

 5. I agree to maintain the existence and terms of this recruitment agreement in confidence and not to disclose it.
 

 Testimony from Clark and Jackie Whitaker, who was in Schumpert’s human resources department, established that Whitaker went over the RIA with Clark and explained that Clark had to sign the RIA to obtain the bonus and that Clark would have to repay the bonus if she left Schum-pert before two years. When asked if the issue of a two-year fixed term of employment ever came up during her conversation with Whitaker, Clark testified, “No. It was a different document.”
 

 Clark worked at the CTC until March 3, 2008, when she was called to Jennifer Var-nadore’s office and told that her position had been eliminated due to budget issues.
 

 Alleging that she had a two-year fixed term employment contract, Clark filed suit against Schumpert for breach of contract on April 29, 2008. | sAs an alternative cause of action, she claimed detrimental reliance based on alleged promises that Dr. Connor’s return would not affect her employment. Clark also sought payment of wages due at termination along with statutory penalties and attorney fees under La. R.S. 23:631
 
 et seq.
 

 
 *1139
 
 After a bench trial, the trial court rendered a written ruling concluding that Clark failed to meet the burden of proving that there was a meeting of the minds on fixed term employment. The trial court found that Clark had at least 13 conversations with Schumpert personnel before accepting the position during which the subject of fixed term employment never came up. Moreover, Clark never mentioned fixed term employment when she heard that Dr. Connor was returning and asked whether she still had a job, when she learned that Schumpert was looking at the CTC’s budget, or when she learned from Varnadore that her position had been eliminated. The court found no credible evidence that Clark really thought she had a two-year fixed term contract in light of the fact that she never brought it up at any of these times. The trial court also found that neither the October 18, 2007, offer letter nor the RIA showed that the parties agreed to be bound for a fixed term. According to the trial court, a complete reading of these documents showed that “the time period of two years (24 months) is in connection and consistent with the obligation to repay the incentive bonus if an employee leaves before the term, rather than guaranteeing two year contract of employment.” Because there was no consent or meeting of the minds as to fixed term employment, the trial court found that Clark was an “at will” employee. The trial court denied Clark’s claims for breach of 1 fiContract and detrimental rebanee but awarded her $31,111.57 plus attorney fees for Schumpert’s failure to timely pay sums due at termination. Judgment was signed on January 22, 2010.
 

 Clark now appeals the denial of her breach of contract claim. She argues that the trial court erred in failing to apply the principles of contract interpretation and in fading to find that the contract, specifically the RIA, established a two-year fixed term for employment.
 

 DISCUSSION
 

 The relationship between an employer and an employee is contractual. Employers and employees are free to negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy.
 
 Chapman v. Ebeling,
 
 41,710 (La.App.2d Cir.12/13/06), 945 So.2d 222;
 
 Fletcher v. Wendelta, Inc.,
 
 43,866 (La.App.2d Cir.1/14/09), 999 So.2d 1223,
 
 writ denied,
 
 2009-0387 (La.4/13/09), 5 So.3d 164. The essential elements of an employment contract include (1) consent, (2) giving of services in the form of labor, and (3) a fixed price.
 
 Vining v. Bardwell,
 
 482 So.2d 685 (La.App. 1st Cir.1985),
 
 writ denied,
 
 487 So.2d 439 (La.1986).
 

 When the parties are silent as to the term or duration of an employment contract, then the employment is presumed to be “at will.”
 
 Quebedeaux v. Dow Chemical Co.,
 
 2001-2297 (La.6/21/02), 820 So.2d 542;
 
 Fletcher, supra.
 
 Employment “at will” is explained in La. C.C. art. 2747:
 

 A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for doing so. 17The servant is also free to depart without assigning any cause.
 

 Employers may dismiss “at will” employees at any time and for any reason without incurring liability for wrongful discharge.
 
 Saacks v. Mohawk Carpet Corp.,
 
 2003-0386 (La.App. 4th Cir.8/20/03), 855 So.2d 359,
 
 writ denied,
 
 2003-2632 (La.12/12/03), 860 So.2d 1158.
 

 In contrast to “at will” employment, La. C.C. art. 2749 provides:
 

 If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he
 
 *1140
 
 shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
 

 This article refers to fixed term employment where the parties agree to be bound for a set duration during which the employee is not free to depart without assigning cause and the employer is not free to dismiss the employee without assigning a reason.
 
 Chandler v. Kenyan,
 
 38,084 (La.App.2d Cir.12/19/03), 862 So.2d 1182. Because employment is presumed to be “at will,” an employee who alleges a fixed term contract has the burden of proving that there was a meeting of the minds on the length of time of the employment.
 
 Id.
 

 Consent to form a contract requires a meeting of the minds.
 
 Worley v. Chandler,
 
 44,047 (La.App.2d Cir.3/4/09), 7 So.3d 38;
 
 Chapman, supra.
 
 The existence or nonexistence of a contract is a question of fact not to be disturbed unless clearly wrong.
 
 Worley, supra; Chapman, supra.
 

 At issue is whether Clark and Schumpert had a meeting of the minds on her employment being for a fixed term of two years as alleged by Clark. Referring to the RIA, Clark asserts that this “form contract” plainly | Restablishes a two-year contract of employment and that any ambiguity or doubt should be interpreted against Schumpert without resort to parol evidence of the parties’ intent. Clark maintains that this is a matter of contract interpretation that is subject to a
 
 de novo
 
 review on appeal. However, Schumpert maintains that this matter presents a question of contract formation, which is an issue of fact subject to review for manifest error.
 

 We will begin with examining the documents signed by Clark in connection with the offer of employment to determine whether they show that the parties consented to or intended a fixed term employment contract. This requires application of the principles of contract interpretation.
 

 The interpretation of contracts, which is the determination of the common intent of the parties, is guided by the general rules set forth in La. C.C. arts. 2045-2057.
 
 Creamer Brother’s Inc. v. Hicks,
 
 43,808 (La.App.2d Cir.12/3/08), 998 So.2d 846,
 
 writ denied,
 
 2009-0315 (La.4/3/08), 6 So.3d 774. When the words
 
 of
 
 a contract are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. Courts are bound to enforce a contract as written.
 
 Shepard v. Phycor of Ruston, Inc.,
 
 29,181 (La.App.2d Cir.5/7/97), 711 So.2d 288.
 

 Though Clark’s brief focuses on language in the RIA in arguing that she had a two-year fixed term contract, she testified that the offer letter she received and signed on October 18, 2007, was the fixed term contract and that it was backed up by the RIA. The offer letter set forth the annual Rsalary, the additional call pay, as well as the availability of reimbursable moving expenses up to $2,500, and a
 
 “sign-on bonus of $2,500 which also requires a signed commitment to remain employed at CSHS for two years.”
 
 A reading of the offer letter as a whole shows that the reference to two years was in connection with the sign-on bonus. No term was attached to the offer of the employment. Nothing in the letter specifies or suggests that Schumpert offered guaranteed employment to Clark for a fixed duration of two years during which it could not terminate her without cause and Clark could not leave without cause.
 

 After she began working at Schumpert, Clark signed the RIA on October 31, 2007. It states that Schumpert “wishes to
 
 *1141
 
 provide financial incentive to Appearer to become and remain an employee.” The incentive is the $2,500 sign-on bonus referred to in the October 18, 2007, offer letter. Schumpert’s offer is the sign-on bonus, not guaranteed employment. The RIA is Clark’s signed commitment to remain at Schumpert for two years as required to qualify for the sign-on bonus. To get the sign-on bonus, Clark agreed “to accept full time employment beginning 10/29/07, with CSHS as a Nurse Practitioner for a period of not less than 24 months or 4,160 hours, whichever is achieved first, continuous employment.” In turn, Schumpert agreed to provide financial incentive for Clark to become and remain its employee by paying the sign-on bonus upon Clark’s completion of a 90-day probationary period. The RIA is not an offer by Schumpert of guaranteed or fixed term employment for two years. In fact, the RIA states that if Clark voluntarily terminates her employment within two years, she must repay the |inbonus. This recognition that Clark might voluntarily terminate her employment within the two-year term belies the assertion that the RIA is a fixed term contract of employment during which Clark is not free to leave and Schumpert is not free to dismiss her without assigning cause.
 

 Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Therefore, the RIA language evidencing Clark’s acceptance of full time employment for a period of not less than 24 months must be interpreted in light of the other provisions of that contract. Doing so shows that the RIA is not an employment contract whereby the parties consented to the giving of services in the form of labor for a fixed price. Clark had already consented to accept the nurse practitioner position at the salary and additional on-call pay offered by Schumpert in the offer letter. Instead, the RIA pertains only to the sign-on bonus. The RIA is Schumpert’s offer of a sign-on bonus, not guaranteed employment for a fixed term. Clark’s declared intent to remain at Schumpert for two years so as to qualify for the sign-on bonus does not mean that Schumpert agreed to employ Clark for a fixed term of two years.
 

 Clark argues that the RIA is a form contract drawn up by Schumpert and must be interpreted against it. La. C.C. art. 2056 provides that in case of doubt, a contract executed in a standard form provided by one party must be interpreted in favor of the other party. First, this is not a case where doubt exists. The contract language is clear, explicit, and unambiguous. In return for Clark’s signed commitment to remain a Schumpert employee for lutwo years, Schumpert agreed to pay a sign-on bonus of $2,500. Clark also agreed to pay back the bonus if she voluntarily left before the two-year period. Neither party committed to a fixed term contract of two years whereby Schumpert could not fire Clark without cause nor Clark could leave without cause.
 

 Second, the RIA is not the type of form contract, typically a contract of adhesion, to which La. C.C. art. 2056 would apply. As explained in
 
 Shepard, supra, citing Golz v. Children’s Bureau of New Orleans, Inc.,
 
 326 So.2d 865 (La.1976), an adhesion contract is typically a standard small print form prepared by a party with superior bargaining power for adherence or rejection by a weaker party. Such contracts raise the question of whether the weaker party actually agreed to its terms. Though the RIA is a form contract used by Schumpert, it is not an adhesion contract. Clark is a highly educated person who actively negotiated her employment
 
 *1142
 
 with Schumpert. In fact, nothing in the record indicates that Clark was required to sign the RIA unless she chose to accept the sign-on bonus. Had Clark not accepted the sign-on bonus, there would be no basis for her argument that she had a fixed term contract. As explained, the reference to the two-year time period in the offer letter and the RIA is only in connection with the sign-on bonus offer and not with the offer of the nurse practitioner position.
 

 On her first day as a Schumpert employee on October 29, 2007, Clark signed Schumpert’s “HR Sendees Handbook Acknowledgment Statement” indicating that she read, understood, and agreed to Schumpert’s guidelines, policies and procedures. The Acknowledgment Statement explained that |12either Clark or Schum-pert could terminate employment, with or without cause, at any time and that employment is for an indefinite term. Thus, the Acknowledgment Statement made clear that Clark was an “at will” employee. Neither the offer letter that preceded Clark’s signing of the Acknowledgment Statement nor the RIA signed afterward provides fixed term employment contrary to Schumpert’s “at will” employment policy.
 

 In
 
 Chandler, supra,
 
 an offer of employment signed by the chief operating officer of a grocery store chain set forth the salary levels for a two-year period. After his termination, Chandler filed suit seeking the salary and bonuses for the remainder of the two-year period covered by his employment contract, which he claimed was a fixed term contract. However, Chandler had also signed a statement in an orientation kit which expressly stated that his employment was “at will” and could be terminated at any time. The trial court concluded there was no fixed term contract and this court affirmed that determination. Construing the employment offer and the signed orientation statement together, this court found that Chandler was an “at will” employee. The offer of employment did not specify that it was an employment contract for a fixed term of two years but merely set forth what Chandler would be paid if he remained employed for two years.
 

 Similarly in this case, neither the offer letter nor the RIA specified that the parties agreed to a fixed term of employment for two years. Instead, as found by the trial court, the two-year term referenced in the offer letter and the RIA was in connection with the sign-on bonus and Clark’s obligation to pay back the bonus if she left before two years. The | ^expression of Clark’s commitment to Schumpert for purposes of obtaining the $2,500 sign-on bonus does not equate to a meeting of the minds by the parties on a fixed term employment contract for two years. Our
 
 de novo
 
 review of the offer letter and RIA pursuant to the principles of contract interpretation does not convince us that either is a fixed term employment contract.
 

 Additionally, the record supports the trial court’s factual finding that the parties did not have a “meeting of the minds” on fixed term employment. As found by the trial court, the record established that Clark had experience with fixed term contracts and was working under such a contract prior to her employment with Schumpert. Though Clark testified that she wanted long-term employment with Schumpert, the issue of fixed, term employment was not a part of her negotiations with Schumpert. In numerous conversations with Schumpert personnel prior to her acceptance of the position, when she learned that Dr. Connor would be returning, and when told that her position was eliminated, Clark did not mention that
 
 *1143
 
 she wanted, had, or believed she had a fixed term employment contract. Clark’s husband, Keith Clark, testified that he understood from his wife that she was obligated for 24 months to receive the job perks, meaning the sign-on bonus. He said they both assumed the obligation was equal. Clearly, an assumption is not a meeting of the minds.
 

 The testimony of Schumpert employees was that Schumpert has an “at will” employment policy. Matthew Berg, who emailed the offer letter to Clark and who was no longer employed at Schumpert at the time of trial due 114to his job being cut around the same time as Clark’s, testified that neither the offer letter nor the RIA was a two-year employment contract. Berg had also signed an RIA and been given the sign-on bonus. He understood the RIA to mean the bonus was his to keep if he stayed at Schumpert for two years and that he would have to repay the bonus if he quit during that time. He testified that the RIA was not an employment contract. Varnadore and another employee, Nicole Williams, likewise testified that they signed offer letters similar to Clark’s and the RIA when hired. They testified that neither document guaranteed employment for a set duration. Also, Jackie Whitaker testified that she went over the RIA with Clark and explained to her that the two-year commitment was for the sign-on bonus and that the bonus would have to be paid back if Clark left within the two-year period.
 

 We find that Clark did not meet the burden of proving that she had a fixed term employment contract with Schum-pert. The reasonable and commonsense reading of the offer letter and the RIA shows that the two year period related to the sign-on bonus. The trial court’s finding that the parties did not have meeting of the minds on fixed term employment is not clearly wrong.
 

 CONCLUSION
 

 For the reasons stated, we affirm the judgment of the trial court. Costs of appeal are assessed against the plaintiff, Rebecca Clark.
 

 AFFIRMED.
 

 [1]
 

 . The reference to a 'T2-month period” was established at trial to be a typographical error. The RIA should be read as referring to a 24-month period.